306 P.3d 140

**LIBERTY DIALYSIS–HAWAII, LLC, a Delaware limited liability company, Petitioner/Appellant–Appellant/Cross–Appellee,**

v.

**RAINBOW DIALYSIS, LLC, a Delaware limited liability company, Respondent/Appellee–Appellee/Cross–Appellant,**

and

State Health Planning & Development Agency, Department of Health, State of Hawai'i, an administrative agency of the State of Hawai'i, Respondent/Appellee–Appellee.

No. SCAP–12–0000018.

Supreme Court of Hawai'i.

June 27, 2013.

Reconsideration Denied July 16, 2013.

Daniel P. Collins, for petitioner.

Ellen Godbey Carson, Honolulu, for respondent Rainbow Dialysis, LLC.

Ann V. Andreas, Honolulu, for respondent State of Hawaii.

RECKTENWALD, C.J., NAKAYAMA, and McKENNA, JJ., with ACOBA, J., dissenting, with whom POLLACK, J., joins.

Opinion of the Court by
RECKTENWALD, C.J.

This appeal requires us to consider whether the Department of Health's general administrative rules concerning disqualification apply to State Health Planning & Development Agency (SHPDA) committees that are established to reconsider the agency's approval of a Certificate of Need. Briefly stated, SHPDA granted Rainbow Dialysis, LLC a conditional Certificate of Need to establish two outpatient dialysis facilities at Kaiser Foundation Health Plan, Inc., facilities on Maui. Another Maui dialysis provider, Liberty Dialysis–Hawaii, LLC, sought reconsideration of SHPDA's decision. Thereafter, a five-member Reconsideration Committee unanimously approved Rainbow's conditional Certificate of Need.

Liberty appealed the Reconsideration Decision to the circuit court, arguing that SHPDA Administrator Ronald E. Terry and another Reconsideration Committee member, Anne Trygstad, should have been disqualified from participating in the Reconsideration Decision under the Department of Health rules. Liberty also argued that the Reconsideration Committee failed to review Rainbow's application de novo, and thereby improperly

placed the burden of proof on Liberty. The circuit court affirmed, holding that the SHPDA Administrator should have been disqualified, but that his participation in the Reconsideration Decision was harmless.[1] The circuit court rejected Liberty's remaining points of error.

On appeal to this court, Liberty argues that Administrator Terry's participation was not harmless and, in any event, Rainbow did not timely raise this argument. Liberty also argues that the Reconsideration Committee erred in refusing to disqualify Trygstad. Finally, Liberty argues that, if this court remands for a new reconsideration hearing based on Liberty's disqualification arguments, it also should advise the Reconsideration Committee that Rainbow bears the burden of proof on remand. Rainbow cross-appealed, and argues that the circuit court erred in determining that Administrator Terry should have been disqualified.

We hold that neither Administrator Terry nor Trygstad was disqualified from participating in the Reconsideration Decision. With regard to Administrator Terry, Liberty relies on Hawai'i Administrative Rules (HAR) § 11–1–25(a)(4), a Department of Health rule that prohibits a hearings officer from hearing or deciding a contested case in which he or she "substantially participated in making the decision or action contested[.]" However, in crafting the reconsideration statute, Hawai'i Revised Statutes § 323D–47, the legislature clearly intended that the SHPDA administrator participate in both the initial decision on a Certificate of Need, and in any reconsideration of that decision. Because HAR § 11–1–25(a)(4) conflicts with this intent, it would be invalid if applied in the circumstances here. Accordingly, we hold that HAR § 11–1–25(a)(4) is inapplicable.

With regard to Trygstad, Liberty relies on HAR § 11–1–25(a)(2), a Department of Health rule that provides for disqualification where a hearings officer, director or member is "related within the third degree by blood or marriage to any party to the proceeding or any party's representative or attorney[.]" Liberty alleges that Trygstad's brother-in-law is the "Kaiser Permanente physician-in-charge for Maui," and testified as a Kaiser representative in three SHPDA advisory panel hearings prior to the initial decision on Rainbow's application, and that, accordingly, Trygstad should have been disqualified from the Reconsideration Committee. We hold that HAR § 11–1–25 is inapplicable to the SHPDA reconsideration proceedings. SHPDA's more specific rule, HAR § 11–185–32, governs disqualification practices and procedures in these proceedings, and does not require that Trygstad be disqualified.

Because our resolution of these issues is dispositive, we do not address Liberty's remaining points of error. Based on the foregoing, we affirm the circuit court's judgment, which affirmed the Reconsideration Decision.

## I. Background

The following factual background is taken from the record on appeal.

### A. Rainbow's Certificate of Need application

Rainbow filed a Certificate of Need (CON) application[2] with SHPDA for the establishment of two outpatient dialysis facilities on Maui. Rainbow is and was a wholly owned affiliate of Kaiser Foundation Health Plan, Inc. (Kaiser). Rainbow's two facilities would be located in or near existing Kaiser clinics in Wailuku and Lahaina. Rainbow asserted that internalizing dialysis services within Kaiser's health care system would improve management of patient care, provide benefits to patients in isolated parts of West Maui, bring competition to the dialysis market and lower prices, create savings over the dialysis services then being provided by Liberty, allow for more robust provision of services for QUEST patients, and allow Kaiser to pass savings on to the community in the form of

---

1. The Honorable Karl K. Sakamoto presided.

2. " 'Certificate of need' means an authorization, when required pursuant to section 323D–43, to construct, expand, alter, or convert a health care facility or to initiate, expand, develop, or modify a health care service." Hawai'i Revised Statutes (HRS) § 323D–2 (2010).

financial and in-kind donations to community partners.

Liberty opposed Rainbow's CON application, asserting that the application failed to meet several criteria for the grant of a CON. Additionally, Liberty asserted that it has provided dialysis services on Maui since 2006, and that there were several reasons that Kaiser's dialysis expenditures had increased, including an increase in the number of Kaiser patients receiving dialysis, regulatory changes, and inflation. Liberty also asserted that its mission "includes providing a safety net[,]" and that its ability to continue to provide services was dependent on its ability "to spread the real costs across a broad base of commercial patients[.]" Liberty asserted that Rainbow's proposal would jeopardize Liberty's "ability to maintain its current scope of services for persons who are not insured by Kaiser." Specifically, "[i]f the small percentage of patients with commercial insurance declines or disappears, Liberty [ ] will be unable to continue to subsidize operations in more remote regions or care for a substantial portion of the underinsured or uninsured patients who currently receive care from Liberty [ ]."

As required under HRS § 323D–44(a),[3] three separate SHPDA advisory panels considered Rainbow's CON application: the Tri–Isle Subarea Health Planning Council, the CON Review Panel, and the Statewide Health Coordinating Council (SHCC). Each advisory panel held public meetings in which they received extensive testimony both for and against the proposal, and each issued non-binding recommendations. By a 4–1 vote, the Tri–Isle Subarea Health Planning Council recommended approval of the application. By a 5–0 vote (with one abstention), the CON Review Panel recommended denial of the application. By a 7–4 vote, the SHCC recommended denial of the application.

On May 3, 2010, SHPDA, through Administrator Terry, filed a Decision on the Merits, approving Rainbow's application and issuing a conditional CON. In so doing, SHPDA imposed three conditions on Rainbow. First, Rainbow was required to submit a "detailed long-term implementation plan" regarding how it and Kaiser would allocate cost reductions to the public and community. Second, Rainbow was required to provide a written acknowledgment that failure to fulfill the implementation plan would constitute a breach of the HAR and could result in withdrawal of the CON. Finally, Rainbow was required to enter into a joint and several written undertaking with Kaiser to provide chronic renal dialysis services to Hana and Molokai, should Liberty cease providing services in those communities within 10 years of the Decision on the Merits. Rainbow subsequently informed SHPDA by letter that it accepted the conditions set forth in the conditional CON and modified its application accordingly.

Liberty sought reconsideration of the Decision on the Merits pursuant to HRS § 323D–47(5)[4] and HAR § 11–186–82.[5] Liberty argued that there was good cause for reconsideration because SHPDA's decision differed from the recommendation of the SHCC.

Pursuant to HRS § 323D–47, a five-member Reconsideration Committee was convened, composed of Administrator Terry, and

---

**3.** Pursuant to HRS § 323D–44(a) (2010), SHPDA "shall transmit the completed [CON] application to the appropriate subarea councils, the review panel, the statewide council, appropriate individuals, and appropriate public agencies."

**4.** HRS § 323D–47 (Supp.2009) provides in relevant part:

The state agency may provide by rules adopted in conformity with chapter 91 for a procedure by which any person may, for good cause shown, request in writing a public hearing before a reconsideration committee for purposes of reconsideration of the agency's decision. The reconsideration committee shall consist of the administrator of the state agency and the chairpersons of the statewide council, the review panel, the plan development committee of the statewide council, and the appropriate subarea health planning council. The administrator shall be the chairperson of the reconsideration committee. A request for a public hearing shall be deemed by the reconsideration committee to have shown good cause, if:

   . . . .

(5) The decision of the administrator differs from the recommendation of the statewide council.

**5.** HAR § 11–186–82(a) (1988) provides procedures for requesting reconsideration, and for the reconsideration process.

the chairpersons of the SHCC, the CON review panel, the plan development committee of the SHCC, and the Tri–Isle Subarea Health Planning Council. On June 14, 2010, four of the five Reconsideration Committee members convened a public meeting and voted to convene a public hearing for reconsideration of the Decision on the Merits.[6] SHPDA appointed Andrew Tseu as Hearings Officer "to facilitate pre-hearing conferences and hearing procedures for the Reconsideration Committee."

Prior to the hearing on Liberty's reconsideration request, Liberty filed a motion to disqualify Administrator Terry from the Reconsideration Committee pursuant to HAR § 11–1–25(a)(4) and (5),[7] on the ground that he could not sit in review of his own decision and had a personal bias or prejudice that would prevent him from rendering a fair and impartial decision. Specifically, Liberty argued:

> In the present matter, HAR § 11–1–25 mandates Terry's disqualification from the reconsideration hearing because, not only did Terry substantially participate in the certificate of need review process but, as the SHPDA administrator, he was the ultimate decision-maker on the Application. Moreover, Terry unilaterally approved the Application despite the recommended rejections by the CON Review Panel and Statewide Council, without providing a written explanation as required by agency rule. Terry further has a personal bias or prejudice which will prevent a fair and impartial decision on this contested case.[8]

Rainbow opposed Liberty's motion. Rainbow argued that HRS § 323D–47 mandates that the SHPDA administrator serve as a member of the Reconsideration Committee, even if the administrator is reviewing his or her own decision. Rainbow also argued that, to the extent HAR § 11–1–25 conflicts with HRS § 323D–47, HRS § 323D–47 governs. Additionally, Rainbow argued that the SHPDA disqualification rules set forth in HAR chapters 11–185 and 11–186 applied, rather than HAR § 11–1–25. Finally, Rainbow argued that Liberty's allegation of Administrator Terry's personal bias was "unfounded and frivolous."

Liberty also filed a motion to disqualify a second Reconsideration Committee member, Anne Trygstad, pursuant to HAR § 11–1–25(a)(2).[9] Liberty alleged that Trygstad is the sister-in-law of Dr. George Talbot, who Liberty described as Kaiser's "physician-in-charge of Maui[.]" Liberty argued that Kaiser was a party to the proceeding and/or a party's representative, and that Dr. Talbot offered testimony in favor of Rainbow's CON application at the hearings before each of the three review panels. Liberty also argued that Trygstad should be disqualified pursuant to HAR § 11–1–25(a)(5) because she had a personal bias or prejudice due to her relationship to Dr. Talbot.

Rainbow opposed Liberty's motion to disqualify Trygstad. Along with its motion, Rainbow submitted a declaration from Dr. Talbot in which he stated:

> 1. I am employed by the Hawaii Permanente Medical Group ("HPMG"), a Hawaii corporation that contracts with [Kaiser] to provide physician services for members of [Kaiser] and other patients

---

6. Elaine Slavinsky, chairperson of the Tri–Isle Subarea Health Planning Council, participated in the June 14, 2010 meeting, but later recused herself and was replaced by Anne Trygstad.

7. HAR § 11–1–25 (2005) provides in pertinent part:

   Disqualification. (a) A hearings officer, director, or member of an attached entity is disqualified from hearing or deciding a contested case if the hearings officer, director, or member of the attached entity:
   . . . .
   (4) Has substantially participated in making the decision or action contested; or

   (5) Has a personal bias or prejudice concerning a party or matter that will prevent a fair and impartial decision involving that party or matter.

8. Liberty argued, inter alia, that Administrator Terry exhibited personal bias or prejudice by approving the CON application despite the votes to reject the application by the CON Review Panel and the SHCC.

9. HAR § 11–1–25(a)(2) (2005) requires disqualification if a person is "related within the third degree by blood or marriage to any party to the proceeding or any party's representative or attorney[.]"

seen at Kaiser's medical facilities in Hawaiʻi.

2. I am currently the HPMG physician in charge of Maui and in that role, I oversee the physician services for Kaiser's Maui clinics, which includes the Kaiser Wailuku Medical Clinic. I am not in charge of the administrative oversight of the Wailuku Medical Clinic, nor am I in charge of the affiliated health care services provided by non-physicians at the Wailuku Medical Clinic. The administrative operation of the Wailuku Clinic is overseen by employees of the Kaiser Foundation Hospitals, Inc., a separate corporation that owns and/or manages Kaiser's hospital and clinic facilities and employs certain affiliated care providers for those facilities.

3. I am the brother-in-law of Anne Trygstad. Other than testimony I presented to the Tri–Isle Subarea Council at its December 3, 2009 public meeting on [Rainbow's CON] Application, at which Ms. Trygstad was present, I have had no communication with Ms. Trygstad in the past two or three years.

4. I own a home in the same subdivision as Ms. Trygstad owns a home. The subdivision consists of over 20 separate houses. My house is at the opposite end of the subdivision from the house owned by Ms. Trygstad.

5. I did not participate in the preparation of the Rainbow CON Application. My only involvement in the CON proceedings has been as a witness, not as a party. I am not an employee or representative of Rainbow.

The Reconsideration Committee denied Liberty's disqualification motions. The Reconsideration Committee did not state its reasoning on the record.

Following a reconsideration hearing,[10] the Reconsideration Committee issued its Decision unanimously approving the conditional certification of Rainbow's application. The Reconsideration Committee found that "[i]t was uncontested that Liberty had the burden of proof in this Reconsideration proceeding pursuant to HRS § 91–10(5) because Liberty initiated the Reconsideration proceeding and acknowledged in writing its burden of proof." The Reconsideration Committee also made detailed findings and conclusions regarding the ways in which Rainbow's CON application either met the CON criteria, or would meet the criteria if modified by the conditions set forth in the Committee's decision. Accordingly, the Reconsideration Committee ordered that a conditional CON be approved and issued, with Rainbow to modify its proposal to incorporate the following conditions: that (1) Kaiser members be permitted to receive dialysis services from Liberty "for as long as they wish"; (2) Rainbow accept all dialysis patients regardless of ability to pay; and (3) Rainbow and Kaiser provide chronic renal dialysis services to Hana and Molokai, should Liberty cease providing services to those communities within 10 years of the Decision on the Merits.

## B. Circuit court appeal

Liberty appealed the Reconsideration Decision to the circuit court, raising numerous points of error. Relevant to the issues on appeal, Liberty argued in its opening brief that the Reconsideration Committee erred in denying its motions to disqualify Administrator Terry and Trygstad. Liberty also argued that the Reconsideration Committee failed to review Rainbow's application de novo, and "thereby improperly placed the burden of proof on Appellant Liberty in contradiction of HAR § 11–186–42[.]"

The circuit court held a hearing on Liberty's appeal and orally ruled that "Administrator Terry should have automatically

---

10. Thirty-one individuals presented testimony at the hearing. Each individual was afforded a maximum of two and a half minutes to testify. Ten individuals testified against the CON. One individual testified as a neutral. Twenty individuals testified in favor of the CON, including Dr. Talbot and six other individuals who identified themselves as being professionally affiliated with a Kaiser entity.

In addition, several parties were afforded five minutes to testify. First, representatives of Liberty and of Unite Here! Local 5, which also sought reconsideration of the Decision on the Merits, testified against the CON for five minutes each. Subsequently, the President and Executive Medical Director of Hawaii Permanente Medical Group testified in favor of the CON on behalf of Rainbow, also for five minutes.

disqualified himself from sitting on the reconsideration committee and his failure to do so was error." Accordingly, the circuit court stated that it would remand to SHPDA with instructions to hear the reconsideration request with an acting SHPDA administrator other than Terry.

Rainbow subsequently filed an ex parte motion for an expedited status conference to address this court's holding in *Waikiki Resort Hotel, Inc. v. City and County of Honolulu*, 63 Haw. 222, 624 P.2d 1353 (1981), and the ICA's holding in *Hui Malama Aina O Ko'olau v. Pacarro*, 4 Haw.App. 304, 666 P.2d 177 (1983). Rainbow argued that, pursuant to these cases, an agency's decision will not be invalidated on the ground that a disqualified official participated in the decision, so long as the decision was passed by a majority of legally competent members. Accordingly, Rainbow argued, Liberty failed to meet its burden of establishing a legal basis for remand. Liberty opposed the motion, arguing, inter alia, that Rainbow's arguments were untimely, the motion was procedurally improper, and *Waikiki Resort Hotel* was distinguishable.

The circuit court construed Rainbow's motion as a motion for reconsideration, and denied it without a hearing on the ground that Rainbow "waived its right to assert those cases and make related arguments due to failure to cite those cases in its answering brief." The circuit court subsequently issued a written order granting Liberty's appeal on the ground that Administrator Terry should have been disqualified, and remanding to SHPDA with instructions to hold the reconsideration hearing with an acting SHPDA administrator other than Administrator Terry.

Liberty thereafter attempted to draft a proposed final judgment. Rainbow objected to Liberty's proposed final judgment because, inter alia, the circuit court had not resolved all of the issues and claims raised in Liberty's appeal. SHPDA also objected to Liberty's proposed final judgment and submitted its own proposed final judgment, which would have granted judgment in favor of Liberty on its first claim for relief relating to Administrator Terry and dismissed all other claims. Liberty subsequently submitted a revised proposed final judgment.

While Liberty's revised proposed final judgment was pending, the circuit court sua sponte requested supplemental briefing on, inter alia, "whether all remaining issues should be decided on the merits, including issues related to *Waikiki Resort Hotel* ... and/or *Hui Malama Aina O Ko'olau*[.]" Following the receipt of supplemental briefing and a hearing, the circuit court issued an order affirming the Reconsideration Decision in its entirety. The circuit court reiterated its conclusion that the Reconsideration Committee erred in failing to disqualify Administrator Terry, but held that the error was harmless pursuant to *Waikiki Resort Hotel*. The circuit court also affirmed the Reconsideration Committee's retention of Anne Trygstad on the ground that the Reconsideration Committee's determination that Dr. Talbot was not a party or a party's representative was not clearly erroneous. Finally, the circuit court concluded that Liberty was judicially estopped from contesting its burden of proof because it had represented to the Reconsideration Committee that Liberty bore the burden of proof. The circuit court also affirmed on other issues unrelated to this appeal.

The circuit court filed its Final Judgment on December 13, 2011, entering judgment in favor of SHPDA and Rainbow and against Liberty. Liberty timely filed a notice of appeal on January 10, 2012.

## C. Appeal to this court [11]

Liberty raises four points of error in its appeal:

(1) The Circuit Court abused its discretion by reconsidering three of its prior orders and entertaining Rainbow's belated argument that the Reconsideration Committee's failure to disqualify Terry

---

11. This court granted Liberty's application to transfer its appeal from the Intermediate Court

of Appeals (ICA) to this court.

should be excused as harmless error under *Waikiki.*

. . . .

(2) The Circuit Court erred in concluding that the Reconsideration Committee's error in failing to disqualify Ronald Terry was harmless.[12]

. . . .

(3) The Reconsideration Committee erred in refusing to disqualify Anne Trygstad from serving on the Reconsideration Committee, and the Circuit Court erred in upholding this decision.

. . . .

(4) The Reconsideration Committee erroneously placed the burden of proof on Liberty rather than Rainbow.[13]

Rainbow raises a single point of error in its appeal: "The circuit court erred when it determined in its December 13, 2011 Order that Administrator Terry should have been disqualified due to the application of HAR § 11–1–25 and based its Final Judgment on that portion of the December 13, 2011 Order." (Record citations omitted). Rainbow argues that "HRS [c]hapter 323D, and HRS § 323D–47 in particular, make clear that the SHPDA Administrator can and should participate in the Decision on the Merits <u>and</u> serve on the Reconsideration Committee that reviews such decisions." (Emphasis in original).

Although "Rainbow agrees with the ultimate ruling of the circuit court in entering Final Judgment in favor of Rainbow," it nonetheless seeks review of its point of error to ensure that "Liberty (and others) cannot use the circuit court's erroneous holding regarding HAR § 11–1–25 and the Administrator's 'disqualification' from the Reconsideration Committee as law of the case here or

12. Because we conclude that neither Administrator Terry nor Trygstad was disqualified, we do not reach Liberty's points of error regarding the harmlessness of Administrator Terry's participation.

13. Liberty acknowledges that, before the Reconsideration Committee, it "erroneously took the position that, because it had requested reconsideration, it bore the burden of proof." Liberty also acknowledges that it is estopped from taking

through offensive use of collateral estoppel in any other proceedings."

SHPDA did not file an appeal or cross-appeal, but did file a unified answering brief in response to both Liberty's and Rainbow's appeals. SHPDA's answering brief generally supported Rainbow's arguments in both the appeal and the cross-appeal.

## II. Standards of Review

### A. Review of agency decisions

■ Review of a decision made by the circuit court upon its review of an administrative decision is a secondary appeal. *Ahn v. Liberty Mut. Fire Ins. Co.*, 126 Hawai‘i 1, 9, 265 P.3d 470, 478 (2011) (citation omitted). The circuit court's decision is reviewed de novo. *Id.* The agency's decision is reviewed under the standards set forth in HRS § 91–14(g). *Id.* HRS § 91–14(g) (1993) provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or

a contrary position on appeal, and from raising this issue as an independent ground for reversal. Nevertheless, Liberty argues that, if this court remands for reconsideration before a new Reconsideration Committee based on Liberty's disqualification arguments, we should also order the Reconsideration Committee to apply the "proper allocation of the burden of proof[.]" Because we affirm the Reconsideration Decision, we do not reach this point of error.

clearly unwarranted exercise of discretion.

"Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *Sierra Club v. Office of Planning*, 109 Hawai'i 411, 414, 126 P.3d 1098, 1101 (2006) (citation, internal quotation marks and brackets omitted).

## B. Statutory interpretation

■ "Statutory interpretation is a question of law reviewable de novo." *Kaleikini v. Yoshioka*, 128 Hawai'i 53, 67, 283 P.3d 60, 74 (2012) (citation omitted).

## C. Interpretation of agency rules

■ General principles of statutory construction apply in interpreting administrative rules. *Id.* "As in statutory construction, courts look first at an administrative rule's language. If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning." *Id.* (citation omitted). While an agency's interpretation of its own rules is generally entitled to deference, this court "does not defer to agency interpretations that are plainly erroneous or inconsistent with the underlying legislative purpose." *Id.* (citation and internal quotation marks omitted).

## III. Discussion

## A. Administrator Terry was not disqualified from participating in the Reconsideration Decision

■ In order to determine whether Administrator Terry was disqualified from participating in the Reconsideration Decision, this court must consider whether the Department of Health (DOH) rule regarding disqualification, HAR § 11–1–25(a)(4), is applicable to the Reconsideration Committee members.[14] As explained in detail below, HAR § 11–1–25(a)(4) prevents a hearings officer from hearing or deciding a contested case in which he or she "substantially participated in making the decision or action contested[.]" Because Administrator Terry made the initial decision to approve Rainbow's CON application, Liberty argues that he was disqualified from the reconsideration hearing.

Rainbow argues that this rule is inapplicable here because it would conflict with HRS § 323D–47, which, Rainbow argues, requires the Administrator to issue the initial decision on a CON application, chair any resulting reconsideration committee, and participate in the reconsideration decision. Rainbow also argues that the more specific SHPDA disqualification rule, HAR § 11–185–32, applies in lieu of the DOH disqualification rule, and would not require Administrator Terry's disqualification in the circumstances of the instant case.

Liberty argues that there is no conflict between the DOH rule and HRS § 323D–47 because nothing in HRS § 323D–47 requires the SHPDA Administrator to personally issue a decision on a CON application. In addition, Liberty argues that the SHPDA disqualification rule does not displace the DOH rule because it covers only a narrow category of disqualifications and does not conflict with the DOH rule.

As set forth below, the legislature, in enacting HRS § 323D–47, envisioned that the SHPDA Administrator would participate in both the initial decision on a CON application and any subsequent reconsideration decision. However, HAR § 11–1–25(a)(4) would preclude the SHPDA Administrator from participating in both of these decisions. Accordingly, HAR § 11–1–25(a)(4) conflicts with HRS § 323D–47, and would be invalid if applied in the circumstances presented here. Moreover, HAR § 11–1–25(a)(4) is inapplicable because the more specific disqualification rule contained in HAR § 11–185–32 governs

---

14. It is undisputed that HAR § 11–1–25, if applicable, would require disqualification of Administrator Terry in the circumstances presented here.

SHPDA hearings officers in CON proceedings. Liberty does not argue that Administrator Terry should have been disqualified pursuant to HAR § 11–185–32, and nothing in this rule would appear to require Administrator Terry's disqualification. Accordingly, Administrator Terry was not disqualified from participating in the Reconsideration Decision.

### 1. The legislature envisioned that the SHPDA administrator would issue the initial decision on a CON application and participate in any reconsideration of that decision

HRS § 323D–47 governs requests for reconsideration of SHPDA's decision on a CON application, and provides in relevant part:

> The state agency may provide by rules adopted in conformity with chapter 91 for a procedure by which any person may, for good cause shown, request in writing a public hearing before a reconsideration committee for purposes of reconsideration of the agency's decision. The reconsideration committee shall consist of the administrator of the state agency and the chairpersons of the statewide council, the review panel, the plan development committee of the statewide council, and the appropriate subarea health planning council. The administrator shall be the chairperson of the reconsideration committee. A request for a public hearing shall be deemed by the reconsideration committee to have shown good cause, if:
>
> . . . .
>
> (5) The decision of the administrator differs from the recommendation of the statewide council.

(Emphasis added).

Rainbow argues that this provision requires the SHPDA administrator to sit in reconsideration of his or her own decision because it requires that the administrator issue the initial decision on a CON applica-

tion, as well as "be a member of, [and] also serve as the chairperson of, any Reconsideration Committee tasked with deciding a challenge to a decision by the Administrator which differs from the recommendation of the SHCC." Liberty argues that this provision does not require the administrator to personally issue the initial decision on a CON application and, thus, does not require that the administrator sit in reconsideration of his or her own decision.[15]

Liberty is correct that nothing in HRS § 323D–47, nor any other provision of chapter 323D, explicitly states that the administrator must personally issue the initial decision on a CON application. *See* HRS chapter 323D. Rather, HRS chapter 323D repeatedly references the CON being issued by the "state agency," *see, e.g.,* HRS § 323D–43(a); HRS § 323D–44(b), meaning SHPDA, *see* HRS § 323D–2. Similarly, the relevant administrative rules state that the decision on the merits will be issued by "the agency," and do not specify that the agency must act through its administrator. HAR § 11–186–70.

Nevertheless, the plain language of HRS § 323D–47 reflects the legislature's understanding that the administrator is responsible for issuing the decision on a CON application on behalf of the agency. Pursuant to HRS § 323D–47, a person may request a hearing "for purposes of reconsideration of the agency's decision" on a CON application where, inter alia, "[t]he decision of the administrator differs from the recommendation of the statewide council." (Emphasis added). Thus, HRS § 323D–47 appears to view the decision of the agency and the decision of the administrator as being one and the same.

Moreover, even assuming there is an ambiguity as to whether the legislature understood that the administrator was responsible for the initial decision on a CON application, this interpretation is supported by legislative history. HRS § 323D–47 was enacted along

---

15. Liberty does not dispute that the administrator has the power to issue a decision on a CON application, but rather argues that the administrator is not required to personally issue such a decision. For example, Liberty argues that the administrator may delegate any such decision making authority to another, in order to preserve his or her ability to sit on the reconsideration committee. However, as set forth below, the statute reflects the legislature's intent that the administrator participate in both decisions.

with the rest of chapter 323D in 1977. 1977 Haw. Sess. Laws Act 178, § 2 at 366–67. Under the 1977 version of the statute, the decision on a reconsideration request was made by the agency itself, rather than by a reconsideration committee. *Id.* At that time, the statute did not provide that a disagreement between the administrator's decision and the SHCC's recommendation provided a good cause basis for reconsideration. *Id.*

HRS chapter 323D was substantially amended in 1987. 1987 Haw. Sess. Laws Act 270, §§ 1–18 at 825–33. Two bills to amend HRS chapter 323D were introduced during the 1987 legislative session: Senate Bill 749, and House Bill 1025.[16] S.B. 749, 14th Leg., Reg. Sess. (1987); H.B. 1025, 14th Leg., Reg. Sess. (1987). Senate Bill 749, which ultimately did not become law, would have amended the reconsideration process to require that the decision on a reconsideration request be made by the CON Review Panel, rather than the agency. S.B. 749, S.D. 1, § 10 at 12–14. In addition, Senate Bill 749 would have added as a ground for reconsideration that "[t]he decision of the administrator differs from the decision of the [SHCC]." *Id.*, § 10 at 13 (emphasis added).

The Senate Health Committee noted that the initial proposal would "[a]uthorize the review panel to veto a decision by the state agency regarding a certificate of need application[.]" S. Stand. Comm. Rep. No. 574, in 1987 Senate Journal, at 1132. However, testimony was received in opposition to this proposal. SHPDA testified, "We do not agree with giving the Review Panel veto authority over the administrator's CON decisions[.]" SHPDA, Testimony to the Senate Health Committee on S.B. 749, 14th Leg., Reg. Sess. (Feb. 23, 1987) (emphasis added). The Department of Health also testified,

"While we are sympathetic to the idea of some appeals mechanism over the SHPDA Administrator's decision, we believe that use of the review panel may build unnecessary conflict into the Agency's operation." Department of Health, Testimony to the Senate Health Committee on S.B. 749, 14th Leg., Reg. Sess. (Feb. 23, 1987) (emphasis added). Accordingly, the Senate Health Committee amended the bill to delete "the review board veto power but granted the review board the authority to hear and rule on requests for reconsideration of a state agency decision[.]" S. Stand. Comm. Rep. No. 574, in 1987 Senate Journal, at 1132.

Meanwhile, House Bill 1025, as initially introduced, did not contain any amendments that would have affected the CON reconsideration process.[17] *See* H.B. 1025, 14th Leg., Reg. Sess. (1987). However, when the bill crossed over to the Senate, the Senate Health Committee received testimony from SHPDA regarding the reconsideration process:

As the law now stands, the only appeal (short of court) of an Agency's decision is to request the Agency itself to reconsider. The Senate version would give the reconsideration authority to the Review Panel. The Agency does not believe that the Review Panel should have the ultimate authority. We suggest the reconsideration authority rest with a small committee made up of the administrator, and the chairpersons of the Statewide Council, the Review Panel, the Plan Development Committee, and the appropriate Subarea Health Planning Council. This would provide a check and balance system with the administrator retaining a strong position but with the possibility of having his decision changed under limited circumstances.

16. Senate Bill 213 also was introduced during the 1987 session, and would have repealed HRS chapter 323D and abolished SHPDA and the CON process on the ground that it "inhibits, rather than promotes, health care cost containment." S.B. 213, 14th Leg., Reg. Sess., § 1 at 1, § 7 at 8 (1987). Senate Bill 213 favored "a policy of increased, relatively unfettered competition in the health care industry[.]" *Id.*, § 1 at 2.

17. The purposes of the bill included removing parts of the law that were no longer pertinent

due to the repeal of related federal legislation; reforming the CON process by allowing some proposals to bypass the full review process; increasing data gathering, analysis, and reporting; tasking SHPDA with looking at emerging health issues; and extending the subarea councils' authority. H. Stand. Comm. Rep. No. 63, in 1987 House Journal, at 1111; *see also* H. Stand. Comm. Rep. No. 703, in 1987 House Journal, at 1439.

SHPDA, Testimony to the Senate Health Committee on H.B. 1025, H.D. 1, 14th Leg., Reg. Sess., at 3 (Mar. 27, 1987) (emphasis added).

Along with its testimony, SHPDA submitted proposed amendments to HRS § 323D–47, which would have provided for a reconsideration committee consisting of "the administrator and the chairpersons of the statewide council, the review panel, the plan development committee of the statewide council and the appropriate subarea health planning council." *Id.*, attachment, § 13 at 20. Under SHPDA's proposal, the administrator would be the chairperson of the reconsideration committee. *Id.*, attachment, § 13 at 20–21. In addition, SHPDA proposed adding as a ground for reconsideration that "[t]he decision of the administrator differs from the recommendation of the statewide council." *Id.*, attachment, § 13 at 21.

The Healthcare Association of Hawaii (HAH) testified regarding SHPDA's proposed amendments:

> With respect to a reconsideration committee under section 13 of the agency's proposed draft, this is clearly the best proposal we have seen seeking to address the controversy surrounding some past decisions by the agency. HAH does, however, believe that the ultimate responsibility for a decision of the agency should rest with the administrator, as it currently does.

HAH, Testimony to the Senate Health Committee on H.B. 1025, H.D. 1, 14th Leg., Reg. Sess., at 2 (Mar. 30, 1987) (emphasis added).

The Senate Health Committee amended the bill, consistent with SHPDA's proposal, to "[p]rovide[ ] for a reconsideration panel for CON's consisting of the administrator of the statewide agency, the chairperson of the statewide council, the appropriate subarea councils, the review panel, and the plan development committee of the statewide council, with the SHPDA administrator as chairperson of the panel[.]" S. Stand. Comm. Rep. No. 1089, in 1987 Senate Journal, at 1365. The final bill enacted into law is in all relevant respects substantively identical to that proposed by SHPDA. *Compare* SHPDA, Testimony to the Senate Health Committee on H.B. 1025, H.D. 1, 14th Leg.,

Reg. Sess., attachment, § 13 at 20–21 *with* HRS § 323D–47. Accordingly, with these amendments, the legislature added the provision that required the good cause determination to be made by a reconsideration committee, rather than solely by the agency. 1987 Haw. Sess. Laws Act 270, § 13 at 832. In addition, the legislature added the provision that specified that a person may request a hearing "for purposes of reconsideration of the agency's decision" where "[t]he decision of the administrator differs from the recommendation of the statewide council." *Id.* (emphasis added).

At the time the legislature amended the statute, the CON review process had been in place for approximately ten years. The testimony in support of the 1987 amendments indicates that the legislature was aware that the SHPDA administrator was responsible for the agency's decisions on a CON application prior to these amendments. *See* HAH, Testimony to the 1987 Legislature on H.B. 1025, H.D. 1, 14th Leg., Reg. Sess., at 2 (Mar. 30, 1987) ("[T]he ultimate responsibility for a decision of the agency should rest with the administrator, as it currently does."); SHPDA, Testimony to the Senate Health Committee on H.B. 1025, H.D. 1, 14th Leg., Reg. Sess., at 3 (Mar. 27, 1987) ("This would provide a check and balance system with the administrator retaining a strong position but with the possibility of having his decision changed under limited circumstances.").

Accordingly, the legislative history reflects that the legislature was aware of the administrator's participation in the initial CON decision, but nonetheless deliberately included the administrator in the reconsideration committee to maintain the administrator's "strong position" with regard to CON applications. Accordingly, HRS § 323D–47 reflects the legislature's intent that the administrator participate in both the initial decision on the merits and the reconsideration decision.

## 2. HAR § 11–1–25(a)(4) conflicts with HRS § 323D–47

Despite the clear legislative intent for the administrator to participate in both the deci-

sion on the merits and the reconsideration decision, application of HAR § 11–1–25(a)(4) to the Reconsideration Committee would prohibit the administrator from carrying out both of these duties. HAR § 11–1–25 provides in relevant part:

(a) A hearings officer, director, or member of an attached entity is disqualified from hearing or deciding a contested case if the hearings officer, director, or member of the attached entity:

. . . .

(4) Has substantially participated in making the decision or action contested[.]

An agency's authority "is limited to enacting rules which carry out and further the purposes of the legislation[.]" *Puana v. Sunn,* 69 Haw. 187, 189, 737 P.2d 867, 870 (1987). "It is axiomatic that an administrative rule cannot contradict or conflict with the statute it attempts to implement." *Agsalud v. Blalack,* 67 Haw. 588, 591, 699 P.2d 17, 19 (1985) (citations omitted); *see also Tamashiro v. Dep't. of Human Servs.,* 112 Hawai'i 388, 427, 146 P.3d 103, 142 (2006). As applied here, HAR § 11–1–25(a)(4) would prohibit the SHPDA administrator from carrying out his or her duties as intended by the legislature and as reflected in HRS § 323D–47. Because, HAR § 11–1–25(a)(4) conflicts with HRS § 323D–47, it would be invalid if applied to CON reconsideration proceedings.[18]

Nevertheless, Liberty argues that this interpretation of the statute would lead to the absurd requirement that no one other than the administrator could make the initial CON decision and participate on behalf of SHPDA in the reconsideration proceedings. However, nothing in the statute would require the SHPDA administrator to personally issue the decision on a CON application and a reconsideration in all cases. The SHPDA rules indicate that a decision may be made by the administrator <u>or</u> the acting administrator. HAR § 11–185–2 (1981) ("'Administrator' means the administrator or the acting administrator of the state health planning and de-

velopment agency."). Accordingly, it would appear that the agency's decision making authority rests with the office, rather than the individual office holder. Thus, for example, if the administrator issued the decision on the merits, but then left his or her position, the acting administrator or a new administrator would participate in the reconsideration decision. HAR § 11–185–2; HRS § 323D–47.

In addition, as discussed in detail below, SHPDA's own disqualification rule, HAR § 11–185–32 (1981), provides that a hearings officer may be disqualified for certain conflicts of interest:

<u>Disqualification of hearing officer.</u> (a) No hearing officer shall preside at any public hearing relating to any matter in which the hearing officer, the hearing officer's spouse, or the hearing officer's child has (or within the twelve months preceding the hearing, had) any substantial ownership, directorship, officership, employment, prospective employment for which negotiations have begun, medical staff, fiduciary, contractual, creditor, debtor, consultative, pecuniary, or business interest.

(b) Where any other conflict of interest exists, the hearing officer shall be disqualified from presiding at the public hearing. The provisions of chapter 84, Hawaii Revised Statutes, and the decisions, advisory opinions, and informal advisory opinions of the state ethics commission shall serve as guidelines in determining whether a conflict of interest exists.

Thus, if the administrator were disqualified from the initial decision on the merits pursuant to HAR § 11–185–32, an acting administrator could participate in both the decision on the merits and the reconsideration decision. HAR § 11–185–2; HRS § 323D–47.

Moreover, unlike HAR § 11–1–25(a)(4), HAR § 11–185–32 does not conflict with the legislature's intent behind the reconsideration process set forth in HRS § 323D–47. Although the legislature generally intended

---

18. HAR § 11–1–25(a)(4) is a general DOH rule that presumably applies to various types of proceedings. Neither party suggests that the rule would be invalid if applied to other proceedings

where the legislature has not expressed its intent for a hearings officer, director, or member to review a decision in which he or she substantially participated.

the administrator to participate in both the decision on the merits and the reconsideration decision, it also presumably was aware of prohibitions against conflicts of interest for public officers and employees, *see* HRS § 84–14(a),[19] and would not have intended that the administrator participate in a decision where such a conflict existed.[20]  HAR § 11–185–32 is consistent with HRS § 84–14. *Compare* HAR § 11–185–32 *with* HRS § 84–14.

Significantly, these conflict of interest provisions are much more limited than those set out in HAR § 11–1–25.  Under HAR § 11–185–32 and HRS § 84–14, the administrator is able to participate in both the decision on the merits and the reconsideration decision, so long as he or she is not disqualified by a limited category of personal interests.  In contrast, application of HAR § 11–1–25, as Liberty urges, would turn this limited exception into the rule, disqualifying the administrator from participation in <u>all</u> reconsideration decisions in which he or she has made the initial decision on behalf of SHPDA on the CON application.  Such a blanket rule is contrary to the legislature's intent, and HAR § 11–1–25(a)(4) therefore cannot be applied

in the instant case.  *See Agsalud,* 67 Haw. at 591, 699 P.2d at 19.

In sum, HAR § 11–1–25(a)(4) would conflict with HRS § 323D–47 if applied in the instant case.  Instead, the SHPDA disqualification rule contained in HAR § 11–185–32 applies in lieu of HAR § 11–1–25.  Liberty has not asserted that Administrator Terry should have been disqualified pursuant HAR § 11–185–32, and we find no basis for his disqualification under this provision.[21]  Accordingly, the circuit court erred in concluding that Administrator Terry was disqualified from participating in the Reconsideration Decision.

**B.  Trygstad was not disqualified from participating in the Reconsideration Decision**

■  Liberty argues that Trygstad should have been disqualified from sitting on the Reconsideration Committee pursuant to HAR § 11–1–25(a)(2).[22]  Liberty alleges that Trygstad should be disqualified because her brother-in-law, Dr. George Talbot, is the "Kaiser Permanente physician-in-charge for Maui" and testified on behalf of Rainbow in

**19.**  HRS § 84–14(a) (1993) provides:

> No employee shall take any official action directly affecting:
> (1) A business or other undertaking in which he has a substantial financial interest; or
> (2) A private undertaking in which he is engaged as legal counsel, advisor, consultant, representative, or other agency capacity.
> A department head who is unable to disqualify himself on any matter described in items (1) and (2) above will not be in violation of this subsection if he has complied with the disclosure requirements of section 84–17; and
> A person whose position on a board, commission, or committee is mandated by statute, resolution, or executive order to have particular qualifications shall only be prohibited from taking official action that directly and specifically affects a business or undertaking in which he has a substantial financial interest; provided that the substantial financial interest is related to the member's particular qualifications.

**20.**  In addition, as discussed in detail below, SHPDA hearings officers would also be subject to disqualification where they exhibit bias or prejudice, or there is an appearance of impropriety or partiality.  *Cf. State v. Ross,* 89 Hawai'i 371, 377, 974 P.2d 11, 17 (1998).

**21.**  Liberty argued below that Administrator Terry should be disqualified pursuant to HAR § 11–1–25(a)(5) based on personal bias or prejudice because he approved Rainbow's CON application despite votes against the application by the CON Review Panel and the SHCC.  However, these allegations are not sufficient to cause a reasonable person to question Administrator Terry's impartiality.  *See Ross,* 89 Hawai'i at 380, 974 P.2d at 20.  First, the recommendations of the CON Review Panel and the SHCC were not binding on Administrator Terry.  HAR § 11–186–45(e) (1981).  Second, another review panel, the Tri–Isle Subarea Health Planning Council, recommended approval of the application.  Third, the conditions that Administrator Terry imposed on Rainbow's application address some of the concerns that led the CON Review Panel and SHCC to recommend denying the application.  Finally, four other independent members of the Reconsideration Committee agreed to approve Rainbow's CON application, despite the recommendations of the CON Review Panel and the SHCC.

**22.**  HAR 11–1–25(a)(2) provides for disqualification where a hearings officer, director or member "[i]s related within the third degree by blood or marriage to any party to the proceeding or any party's representative or attorney[.]"

support of its CON application. Accordingly, Liberty argues, Dr. Talbot was a "party's representative" and, therefore, Trygstad's disqualification was mandatory.

Rainbow argues that HAR § 11–1–25 is inapplicable to SHPDA proceedings, and that the more specific SHPDA disqualification rule, HAR § 11–185–32, should apply instead.[23] Rainbow also argues that Dr. Talbot was not a representative of Kaiser as envisioned under HAR § 11–1–25 because Dr. Talbot's employer (Hawaii Permanente Medical Group (HPMG)), and Kaiser are "separate corporate entities."

We conclude that HAR § 11–1–25 is inapplicable here because the more specific SHPDA disqualification rule contained in HAR § 11–185–32 governs SHPDA hearings officers.

The DOH rules of practice and procedure are contained in HAR chapter 11–1. HAR § 11–1–1 (2005) provides a "Statement of scope and purpose" for HAR chapter 11–1, and provides in relevant part:

(a) This chapter governs the practice and procedure before the department of health, State of Hawaii, provided that an attached entity may adopt and shall be governed by its own specific rules of practice and procedure if it has rulemaking authority, and provided that the director may adopt more specific rules of practice and procedure for any specific program, and those more specific rules shall govern the practice and procedure in proceedings for that program. Where such specific rules fail to cover particular practices and procedures, then these rules shall apply. (Emphasis added).

Here, SHPDA is an "attached entity" of the DOH with rulemaking authority. HAR § 11–1–3 (2005); HRS § 323D–44(b). Accordingly, SHPDA has authority pursuant to HAR § 11–1–1 to adopt its own specific rules of practice and procedure. SHPDA exercised this authority by adopting HAR chapter 11–185. Accordingly, chapter 11–185 "shall govern the practice and procedure" in SHPDA proceedings, unless it "fail[s] to cover particular practices and procedures[.]" HAR § 11–1–1.

As discussed above, HAR § 11–185–32 is SHPDA's general disqualification rule, and provides in relevant part:

(a) No hearing officer shall preside at any public hearing relating to any matter in which the hearing officer, the hearing officer's spouse, or the hearing officer's child has (or within the twelve months preceding the hearing, had) any substantial ownership, directorship, officership, employment, prospective employment for which negotiations have begun, medical staff, fiduciary, contractual, creditor, debtor, consultative, pecuniary, or business interest.

(b) Where any other conflict of interest exists, the hearing officer shall be disqualified from presiding at the public hearing. The provisions of chapter 84, Hawaii Revised Statutes, and the decisions, advisory opinions, and informal advisory opinions of the state ethics commission shall serve as guidelines in determining whether a conflict of interest exists. [24]

---

**23.** HAR § 11–185–32(a) also addresses disqualification based on family relationships, but to a more limited degree, providing for disqualification where:

the hearing officer, the hearing officer's spouse, or the hearing officer's child has (or within the twelve months preceding the hearing, had) any substantial ownership, directorship, officership, employment, prospective employment for which negotiations have begun, medical staff, fiduciary, contractual, creditor, debtor, consultative, pecuniary, or business interest.

**24.** HAR chapter 11–186 governs the CON process, and also contains a separate conflict of interest provision that is substantially similar to HAR § 11–185–32:

(a) No member of a subarea council, a countywide review committee, the review panel, or the statewide council shall vote on any matter respecting an applicant with which the member, the member's spouse, the member's child, or the member's parent has (or within the twelve months preceding the vote, had) any substantial ownership, directorship, officership, employment, prospective employment for which negotiations have begun, medical staff, fiduciary, contractual, creditor, debtor, or consultative relationship.

(b) If such a relationship exists or has existed, the member shall make a written disclosure of the relationship before any action is taken with respect to the applicant by the subarea council, countywide review committee, review panel,

■ Liberty argues that this rule does not displace "the more comprehensive provisions" of HAR § 11–1–25 because HAR §§ 11–1–25 and 11–185–32 do not conflict. However, Liberty's argument is misplaced. In general, where rules overlap in their application but do not irreconcilably conflict, effect will be given to both, if possible. *See Cnty. of Hawai'i v. C & J Coupe Family Ltd. P'ship.*, 120 Hawai'i 400, 405, 208 P.3d 713, 718 (2009). However, HAR § 11–1–1 qualifies this general rule by stating that, "specific rules of practice and procedure for any specific program ... shall govern the practice and procedure in proceedings for that program." Thus, HAR § 11–1–1 applies only where "such specific rules fail to cover particular practices and procedures[.]" (Emphasis added). As a result, the relevant question is not whether HAR §§ 11–185–32 and 11–1–25 conflict, but rather whether HAR § 11–185–32 "fail[s] to cover" disqualification practices and procedures, such that HAR chapter 11–1 applies. Because HAR § 11–185–32 does cover disqualification practices and procedures for SHPDA hearings officers, it applies in lieu of HAR § 11–1–25.

Nevertheless, Liberty argues that HAR § 11–1–25 applies because it covers a broader range of disqualifications than HAR § 11–185–32. However, this argument is not supported by HAR § 11–1–1. HAR chapter 11–1 is not intended to fill every gap in an attached entity's more specific rules. Rather, it applies only where an attached entity's rules do not "cover particular practices and procedures[.]" Here, SHPDA's rules cover disqualification practices and procedures. Accordingly, DOH's general disqualification rule does not apply, even though it would provide for disqualification under a broader range of circumstances. This is logical given that, in certain circumstances, such as those presented here, the general DOH rules may conflict with the legislature's intent that certain practices or procedures be performed by specific administrative authorities.

Liberty also argues that, because HAR § 11–185–32 contains no express prohibition against a biased or prejudiced hearings officer, application of only HAR § 11–185–32 would allow a hearings officer who harbored a bias or prejudice against a party to sit on the Reconsideration Committee. Liberty further argues that, if the phrase "any other conflict of interest" in HAR § 11–185–32(b) is read broadly to include bias or prejudice, it must also be read to include all of the bases for disqualification contained in HAR § 11–1–25.

These arguments are unpersuasive. First, bias or prejudice is a form of conflict of interest. *See, e.g., Daiichi Hawaii Real Estate Corp. v. Lichter*, 103 Hawai'i 325, 339–40, 82 P.3d 411, 425–26 (2003) ("Under Hawai'i law, 'evident partiality' sufficient to vacate an arbitration award may be demonstrated when a conflict of interest exists with the arbitrator. ... Hawai'i courts have explained that evident partiality not only exists when there is actual bias on the part of the arbitrator, but also when undisclosed facts demonstrate a 'reasonable impression of partiality.' ") (citation omitted) (emphasis added). Accordingly, it is not necessary to resort to HAR § 11–1–25 to conclude that

---

or statewide council to which the member belongs and the member shall make the relationship public in any meeting in which action is to be taken with respect to the applicant.
(c) Where any other conflict of interest exists, a member of a subarea council, countywide review committee, review panel, or statewide council shall be disqualified from voting in the review of an application. The provisions of chapter 84, Hawaii Revised Statutes, and the decisions, advisory opinions, and informal advisory opinions of the state ethics commission shall serve as guidelines in determining whether a conflict of interest exists.
HAR § 11–186–51.
Because Trygstad participated in the Reconsideration Committee as a representative of the Tri-

Isle Subarea Health Planning Council, this provision also could be read to apply to her disqualification. *See* HAR § 11–186–51(a) (providing that a member of a subarea council shall not vote "on any matter respecting an applicant" where the member has a conflict of interest). However, HAR § 11–186–51 also could be read as applying solely to actions taken "by the subarea council, countywide review committee, review panel, or statewide council[,]" but not the Reconsideration Committee. *See* HAR § 11–186–51(b). Because HAR §§ 11–186–51 and 11–185–32 do not differ materially, and because SHPDA's and Rainbow's arguments rely on HAR § 11–185–32, we need not resolve whether HAR § 11–186–51 also applies.

"conflict of interest" includes "bias or prejudice."

Second, bias or prejudice would be a basis for disqualification even if the Department of Health and SHPDA failed to promulgate any rules regarding disqualification. This is because due process requires disqualification where "circumstances fairly give rise to an appearance of impropriety and reasonably cast suspicion on [the adjudicator's] impartiality." *Ross*, 89 Hawai'i at 377, 974 P.2d at 17 (citation and ellipses omitted).[25] Otherwise, the multitude of agency disqualification rules that fail to directly address bias or prejudice would absurdly allow for participation by biased or prejudiced adjudicators.[26] Accordingly, Liberty is incorrect in arguing that HAR § 11–185–32 is inadequate because it does not directly address bias or prejudice.

Finally, although Liberty argued in the circuit court that the Reconsideration Committee members were not hearings officers and that HAR § 11–185–32 was therefore inapplicable, it has abandoned this argument on appeal. Indeed, Liberty now asserts that both rules "must be given effect." Accordingly, Liberty has waived any argument that HAR § 11–185–32 is inapplicable to the Reconsideration Committee members. Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived."). Although this issue was not addressed in the parties' appellate briefing, the dissent nevertheless concludes that HAR § 11–185–32 is inapplicable because the Re-

consideration Committee members are not hearings officers. Dissenting opinion at 118–19, 306 P.3d at 163–64. We respectfully disagree.

Before the Reconsideration Committee and on appeal, SHPDA has consistently argued that HAR § 11–185–32 governs the disqualification of Reconsideration Committee members. As SHPDA explained in the circuit court, the SHPDA rules preceded the DOH rules by many years. SHPDA stated,

So for years, the two chapters, 11–185 and 11–186 specifically in the certificate of need matters governed. Perhaps Rule No. 11–185–32 is not as comprehensive or as eloquent as it could be if revised today, but it is a clear disqualification of hearing officer rule. And in this instance in the reconsideration committee situation it is the reconsideration committee who is the hearing officer of the reconsideration.

.... And these rules were promulgated with the understanding that the public hearing that would follow the grant of a reconsideration would be heard by the reconsideration committee.

(Emphasis added).

SHPDA's interpretation of its own rules is entitled to deference unless it is clearly erroneous or inconsistent with the underlying legislative purpose. *See Kaleikini*, 128 Hawai'i at 67, 283 P.3d at 74.

HAR § 11–185–32 must be construed in pari materia with HRS § 323D–47 and the other rules governing SHPDA and the CON process. HRS § 1–16 (1993) ("Laws in pari

---

25. In *Ross*, the applicable statute expressly provided for disqualification where a judge had a "personal bias or prejudice[.]" 89 Hawai'i at 376, 974 P.2d at 16. However, this court looked beyond the statute to due process to determine, not actual bias or prejudice, but "whether circumstances fairly give rise to an appearance of impropriety and reasonably cast suspicion on the judge's impartiality." *Id.* at 377, 974 P.2d at 17 (internal quotation marks, ellipses, and brackets omitted). Because of the statutory disqualification requirement, this court was not required to determine whether a judge's actual bias or prejudice would also implicate due process. However, it would be incongruous to conclude that an appearance of impropriety or partiality violates due process, but actual impropriety or partiality does not.

26. *See, e.g.*, HAR §§ 3–90–3 (1987) (conflicts of interest for State Foundation of Culture and the

Arts), 6–23–45 (2009) (disqualification in contested case proceedings before Department of Budget and Finance), 6–61–28 (1992) (disqualification in hearings before the Public Utilities Commission), 11–62–58 (2004) (conflicts of interest in review of wastewater management permits), 11–175–4(c) (1988) (conflicts of interest for State Council on Mental Health and Substance Abuse), 11–271–104 (1994) (disqualification in contested case proceedings relating to hazardous waste management), 13–167–61 (1988) (disqualification in contested case proceedings before Commission on Water Resource Management), 13–197–20 (1989) (disqualification in contested case proceedings before Hawai'i Historic Places Review Board), 13–300–62 (1996) (disqualification in administrative appeals relating to burial sites and human remains).

materia, or upon the same subject matter, shall be construed with reference to each other."). HRS § 323D–47 and HAR § 11–186–82(d) make clear that, where there is good cause for reconsideration, the Reconsideration Committee must hold a public hearing and then issue a decision on behalf of SHPDA.[27] It is beyond dispute that the hearing conducted by the Reconsideration Committee in the instant case constituted a public hearing. *See* HAR § 11–185–30 ("At any public hearing held by the agency, any person shall have the right to present oral or written arguments and evidence relevant to the matter which is the subject of the hearing."). The Reconsideration Committee members presided at this hearing, ruling on evidentiary objections and motions, and issuing the Reconsideration Decision. Accordingly, it was not clearly erroneous for SHPDA to conclude that the Reconsideration Committee members are hearings officers whose disqualification is governed by HAR § 11–185–32.

Moreover, although HAR § 11–185–31 indicates that a separate hearings officer may be appointed for the purpose of ensuring the "orderly and just conduct of the hearing," nothing in HAR § 11–185–31 indicates that the Reconsideration Committee members are thereby excluded from the disqualification provisions of HAR § 11–185–32. In other words, the fact that SHPDA designated Andrew Tseu as a hearings officer to assist the Reconsideration Committee in conducting the hearing did not render HAR § 11–185–32 inapplicable to the Reconsideration Committee members.

Lastly, the dissent argues that, prior to the adoption of the DOH rules, SHPDA's rules "did not explicitly provide disqualification rules for reconsideration committee members," and, therefore, the DOH rule should apply. Dissenting opinion at 120, 306 P.3d at 165. However, this argument is unpersuasive. Under the dissent's analysis, no disqualification rules would have governed the Reconsideration Committee members from the establishment of the Reconsideration Committee procedure in 1987 until the promulgation of the DOH rule in 2005. Thus, according to the dissent, during that almost 20–year period, SHPDA had conflict of interest rules governing non-binding advisory committee members and hearings officers who preside over non-substantive matters, but neglected to provide any disqualification rules governing the persons responsible for the agency's final action on a CON application. We decline to adopt an interpretation of the rules that would lead to such a result. *See Sierra Club v. Dep't. of Transp.*, 120 Hawai'i 181, 227, 202 P.3d 1226, 1272 (2009) ("[I]t is well-settled that statutory construction dictates that an interpreting court should not fashion a construction of statutory text that ... creates an absurd or unjust result." (internal quotation marks and citation omitted)).

In sum, HAR § 11–185–32 applies in the instant case. Because Liberty has not raised any arguments to suggest that Trygstad should have been disqualified pursuant to HAR § 11–185–32, its arguments are without merit.

## IV. Conclusion

Although we do not adopt the circuit court's reasoning, we affirm its December 13, 2011 final judgment, which affirmed the Reconsideration Committee's February 17, 2011 Reconsideration Decision.

Concurring and Dissenting Opinion by ACOBA, J., with whom POLLACK, J., joins.

I would hold[1] first, that under its plain language, Hawai'i Administrative Rules

---

**27.** HAR § 11–186–82(d) states that "the committee shall schedule a public hearing for reconsideration of the decision" and "[t]he committee shall file a decision on the reconsideration within forty-five days after the conclusion of the hearing." (Emphasis added.) Here, the Reconsideration Decision was filed by all five Reconsideration Committee members.

**1.** I concur with the majority's holding to the extent that it holds that the Administrator of SHPDA, Ronald E. Terry (Administrator Terry), was permitted to participate in the Reconsideration Decision because the DOH disqualification rule, HAR § 11–1–25(a)(4), as applied to a motion to disqualify the administrator in a reconsideration proceeding, would conflict with HRS § 323D–47(5) (Supp.2009). *See* Majority's opinion at 106–07, 306 P.3d at 153.

(HAR) § 11–1–25 (2005) [2], as the Department of Health (DOH) rule governing disqualification, is applicable to Respondent/Appellee–Appellee State Health Planning & Development Agency (SHPDA) members who sit on the Reconsideration Committee. SHPDA's specific disqualification rule, § 11–185–32 (1981) [3], only applies to the disqualification of hearing officers, not reconsideration committee members. Anne Trygstad (Trygstad) was not a hearing officer, but a member of the SHPDA Reconsideration Committee that issued the February 17, 2011 "Decision on the Reconsideration" (Reconsideration Decision). Because HAR § 11–185–32, a specific rule of SHPDA, on its face applies only to hearing officers, it does not apply to Trygstad, who was a Reconsideration Committee member. HAR § 11–185–32 thus "fail[s] to cover this particular practice and procedure" regarding members of the Reconsideration Committee. HAR § 11–1–1 (2005) [4]. Consequently, pursuant to HAR § 11–1–1, the DOH "rules [such as HAR § 11–1–25] shall apply." *Id.* (emphasis added). Following that mandate, Trygstad was subject to dis-

qualification from participating in the Reconsideration Decision under HAR § 11–1–25, because she was "related within the third degree by ... marriage" to Dr. George Talbot (Dr. Talbot), who may have been a representative of Respondent/Appellee–Appellee/Cross–Appellant Rainbow Dialysis, LLC (Rainbow), a party favored by the Reconsideration Decision.

Second, in my view, the circuit court of the first circuit (the court) erred when it affirmed SHPDA's decision denying the motion to disqualify Trygstad filed by Petitioner/Appellant–Appellant/Cross–Appellee Liberty DialysisHawai'i LLC (Liberty), because SHPDA did not include any reasons on the record for its denial of Liberty's Motion to Disqualify Trygstad. Thus it is impossible to determine which disqualification rule SHPDA applied in reaching its conclusion and whether its findings were clearly erroneous or not, based on that rule. *See In re Water Use Permit Applications*, 105 Hawai'i 1, 27, 93 P.3d 643, 669 (2004) (Acoba, J., concurring) (" 'Findings and conclusions by an administrative agency must be reasonably

2. HAR § 11–1–25 provides that:

§ 11–1–25 Disqualification. (a) A hearings officer, director, or member of an attached entity is disqualified from hearing or deciding a contested case if the hearings officer, director, or member of the attached entity:

(1) Has a substantial financial interest as defined by section 84–3, Hawai'i Revised Statutes [ (HRS) ], in a business or other undertaking that will be directly affected by the decision of the contested case;

(2) Is related within the third degree by blood or marriage to any party to the proceeding or any party's representative or attorney;

(3) Has participated in the investigation preceding the institution of the contested case proceedings or has participated in the development of the evidence to be introduced in the hearing; or

(4) Has substantially participated in making the decision or action contested; or

(5) Has a personal bias or prejudice concerning a party or matter that will prevent a fair and impartial decision involving that party or matter.

. . . .

(Emphases added). *See* discussion *infra.*

3. HAR § 11–185–32 provides:

Sec. 11–185–32 Disqualification of hearing officer (a) No hearing officer shall preside at any public hearing relating to any matter in which the hearing officer, the hearing officer's

spouse, or the hearing officer's child has (or within twelve months preceding the hearing, had) any substantial ownership, directorship, officership, employment, prospective employment for which negotiations have begun, medical staff, fiduciary, contractual, creditor, debtor, consultative, pecuniary, or business interest.

(b) Where any other conflict of interest exists, the hearing officer shall be disqualified from presiding at the public hearing. The provisions of chapter 84, [HRS], and the decisions, advisory opinions, and informal advisory opinions of the state ethics commission shall serve as guidelines in determining whether a conflict of interest exists.

(Emphases added.) *See* discussion *infra.*

4. HAR § 11–1–1(a) provides:

§ 11–1–1 Statement of scope and purpose. (a) This chapter governs the practice and procedure before the department of health, State of Hawai'i, provided that an attached entity may adopt and shall be governed by its own specific rules of practice and procedure if it has rulemaking authority, and provided that the director may adopt more specific rules of practice and procedure in proceedings for that program. Where such specific rules fail to cover particular practices and procedures, then these rules shall apply.

(Emphasis added.) *See* discussion *infra.*

clear to enable the parties and the court to ascertain the basis of the agency's decision.'") (quoting *Igawa v. Koa House Rest.*, 97 Hawai'i 402, 412, 38 P.3d 570, 580 (2001) (Acoba, J., concurring)); *see also Nakamura v. State*, 98 Hawai'i 263, 276, 47 P.3d 730, 743 (2002) (Acoba, J., concurring and dissenting) (" 'An agency's finding must be sufficient to allow the reviewing court to track the steps by which the agency reached its decision.'") (quoting *Kilauea Neighborhood Ass'n v. Land Use Comm'n*, 7 Haw.App. 227, 230, 751 P.2d 1031, 1034 (App.1988)). Therefore, respectfully, the court should have remanded the issue back to SHPDA to apply HAR § 11–1–25 in determining Liberty's Motion for Disqualification of Trygstad. *See* Hawai'i Revised Statutes (HRS) § 91–14(g) (1993) ("Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings[.]"). Accordingly, I respectfully dissent to the majority's holding that Trygstad was qualified to participate in the Reconsideration Decision. *See* majority's opinion at 110–12, 306 P.3d at 155–57.

Third, I would hold that, should Trygstad have been disqualified, the failure to disqualify her would not be harmless. In deciding this question, a court should consider not just whether the decision maker cast the deciding vote, but should engage in a reasoned consideration of how the conflicted decision maker may have affected the outcome. If the conflicted decision maker would have had a substantial impact on the outcome, then he or she must be disqualified. In order to determine whether an individual had a substantial impact, three factors should be considered, "(1) whether the member disclosed the interest or the other [group] members were fully aware of it; (2) the extent of the member's participation in the decision; and (3) the

magnitude of the member's interest." *Griswold v. City of Homer*, 925 P.2d 1015, 1029 (Alaska 1996). Applying such considerations, if Trygstad was disqualified, her participation in the Reconsideration Decision was not harmless.

Fourth, with respect to who would have the burden of proof on the Reconsideration Decision if this case were remanded, I would hold that Rainbow has the burden of proof.

I.

To briefly recount the facts, Liberty currently provides dialysis services at two facilities on Maui, located in Wailuku and Kahana. Rainbow is and was a wholly owned affiliate of Kaiser Foundation Health Plan, Inc. (Kaiser).

On September 28, 2009, Rainbow filed a Certificate of Need application (CON Application) with SHPDA. The CON Application proposed two new dialysis facilities for Maui that would be operated by Rainbow. Liberty intervened in the SHPDA proceeding and opposed Rainbow's CON Application.

Pursuant to HRS § 323D–45 (2010)[5], Rainbow's CON Application was reviewed by three different SHPDA advisory panels. On December 3, 2009, the CON Application was reviewed by the Tri–Isle Subarea Health Planning Council (Subarea Council) at a public meeting. At this public meeting, Dr. Talbot testified in support of the CON Application. He testified, *inter alia,* that, "I am the Kaiser Permanente physician-in-charge for Maui." Dr. Talbot is the brother-in-law of Trygstad, who was a member of the Tri–Isle Subarea Health Planning Council and was present at the public meeting. The council voted 4 to 1 in favor of <u>recommending ap-</u>

---

5. HRS § 323D–45 provides, in relevant part:
   (a) [T]he state agency shall refer every application for a certificate of need <u>to the appropriate subarea council or councils, the review panel, and the statewide council.</u> The subarea council and the review panel shall consider all relevant data and information submitted by the state agency, subarea councils, other areawide or local bodies, and the applicant, and may request from them additional data and information. The review panel shall consider each application at a public meeting and shall sub-

mit its recommendations with findings to the statewide council. The statewide council shall consider the recommendation of the review panel at a public meeting and shall submit its recommendations to the state agency within such time as the state agency prescribes. The statewide council and the review panel may join together to hear or consider simultaneously information related to an application for a certificate of need.
   (Emphasis added.)

proval of the CON Application. Trygstad voted in favor of recommending approval.

Another advisory panel, the Certificate of Need Review Panel (Review Panel) reviewed the CON Application at a public meeting on December 11, 2009 and voted 5 to 0 in favor of recommending disapproval. Finally, on December 17, 2009, the Statewide Health Coordinating Council (Statewide Council) reviewed the CON Application and voted 7 to 4 in favor of recommending disapproval.

SHPDA issued its Decision on the Merits on May 3, 2010. The Decision on the Merits concluded with an order stating that "[SHPDA] hereby APPROVES and ISSUES a CONDITIONAL certificate of need to [Rainbow], for the proposal described in [the CON Application]." The Decision on the Merits was signed by Administrator Terry.

On May 11, 2010 Liberty requested reconsideration of the Decision on the Merits pursuant to HRS § 323D–47(5) (2010) [6]. In this instance, reconsideration was required under HRS § 323D–47(5), because the decision of Administrator Terry in the Decision on the Merits differed from the recommendation of the Statewide Council. HRS § 323D–47 provides that the SHPDA administrator "shall be the chairperson of the reconsideration committee." As noted, Administrator Terry was the SHPDA administrator, so the statute would require that he serve as the chairperson of the Reconsideration Committee. HRS § 323D–47 also designates the four other members of the Committee, which in this case included each of the chairpersons of the Statewide Council, the Review Panel, the

plan development committee of the Statewide Council, and the Subarea Planning Council. Trygstad was the member of the Reconsideration Committee representing the Subarea Planning Council.[7] The Reconsideration Committee convened on June 14, 2010, and voted to grant reconsideration.

On December 9, 2010, Liberty filed a Motion to Disqualify Administrator Terry from the Reconsideration Decision, alleging that he should be disqualified under HAR § 11–1–25 for two reasons. The bases for disqualification were that he "substantially participated in the underlying decision as the administrator of the SHPDA, the body tasked with reviewing and deciding on [CON] applications[,]" and "he [had] a personal bias or prejudice that [would] prevent a fair and impartial decision...."

On the same date, Liberty also filed a Motion to Disqualify Trygstad. In the Memorandum in Support of its Motion, Liberty alleged that Trygstad's disqualification was required pursuant to HAR § 11–1–25, because "[s]he is related within the third degree by marriage to a party to the proceeding and/or a party's representative[,]" and "[s]he has a personal bias or prejudice that [would] prevent a fair and impartial decision...." Specifically, Liberty maintained that Trygstad's brother-in-law, Dr. Talbot, a relation within the third degree, served as the physician-in-charge of Maui for Kaiser, the party, and participated in the hearings with respect to Rainbow's CON Application.[8]

Rainbow opposed both Motions to Disqualify. With respect to Trygstad, Rainbow al-

---

6. HRS § 323D–47 provides, in pertinent part:

> The state agency may provide by rules adopted in conformity with chapter 91 for a procedure by which any person may, for good cause shown, request in writing a public hearing before a reconsideration committee for purposes of reconsideration of the agency's decision. The reconsideration committee shall consist of the administrator of the state agency and the chairpersons of the statewide council, the review panel, the plan development committee of the statewide council, and the appropriate subarea health planning council. The administrator shall be the chairperson of the reconsideration committee. A request for a public hearing shall be deemed by the reconsideration committee to have shown good cause, if:

> . . .

> (5) The decision of the administrator differs from the recommendation of the statewide council.

> . . . .

(Emphases added.)

7. Originally, Elaine Slavinsky, the chairperson of the Tri–Isle Subarea Health Planning Council, was part of the Reconsideration Committee. She was recused and replaced by Trygstad.

8. Liberty further contended that Trygstad should be disqualified pursuant to, *inter alia*, HRS § 323D–13.5 (2005), because she was employed by a health care provider as the coordinator of the Registered Nurse Community Project. This argument was not raised on appeal.

leged that Dr. Talbot was not a party to the contested case proceeding or any party's representative because he was employed by Hawai'i Permanente Medical Group, a corporation that only contracts with Kasier. In support of its Memorandum in Opposition to Liberty's Motion to Disqualify Trygstad, Rainbow included a Declaration of Dr. Talbot, which stated:

1. I am employed by the Hawaii Permanente Medical Group ("HPMG"), a Hawaii corporation that contracts with [Kaiser] to provide physician services for members of [Kaiser] and other patients seen at Kaiser's medical facilities in Hawai'i.

2. I am currently the HPMG physician in charge of Maui and in that role, I oversee physician services for Kaiser's Maui clinics, which includes the Kaiser Wailuku Medical Clinic. I am not in charge of the administrative oversight of the Wailuku Medical Clinic, nor am I in charge of the affiliated health care services provided by non-physicians at the Wailuku Medical Clinic. The administrative operation of the Wailuku Clinic is overseen by employees of Kaiser Foundation Hospitals, Inc., a separate corporation that owns and/or manages Kaiser's hospital and clinic facilities and employs certain affiliated care providers for those facilities.

The Reconsideration Committee denied both of Liberty's disqualification motions.

A public hearing was held on January 3, 2011, and the hearing was presided over by Hearings Officer Andrew Tseu. On February 17, 2011, the Reconsideration Committee issued its Reconsideration Decision, which was signed by the five members of the Reconsideration Committee who had been appointed in accordance with HRS § 323D–47. The committee consisted of Administrator Terry and four other committee members, including Trygstad.

On March 17, 2011, Liberty filed a Notice of Appeal of SHPDA's Reconsideration Decision in the court. The appeal alleged, *inter alia*, that Administrator Terry and Trygstad

should have been disqualified from participating in the Reconsideration Decision, and that the Reconsideration Committee "failed to apply a *de novo* standard of review ... and, thereby improperly placed the burden of proof on [ ] Liberty...."

The court held a hearing on September 27, 2011, during which it orally ruled that, "the court for the foregoing reasons thereby remands this case to SHPDA with instructions to hold the reconsideration committee hearing with an acting SHPDA administrator, not [Administrator] Terry, and appropriate acting chairpersons as necessitated under [HRS § ] 323D–47 and HAR [§ ] 11–1–25." Both parties made arguments with respect to Trygstad's disqualification, and the court stated at the hearing that the case was remanded for SHPDA to hold the reconsideration hearing with "appropriate acting chairpersons as necessitated under [HRS § ] 323D–7 and HAR [§ ] 11–1–25."

After the hearing, on September 29, 2011, Rainbow filed an ex parte motion for an expedited status conference, contending that this court's holding in *Waikiki Resort Hotel, Inc. v. City and County of Honolulu*, 63 Haw. 222, 624 P.2d 1353 (1981), and the ICA's holding in *Hui Malama Aina O Ko'olau v. Pacarro*, 4 Haw.App. 304, 666 P.2d 177 (App.1983), indicated the failure to disqualify Administrator Terry was harmless because he did not cast the deciding vote. The court denied Rainbow's ex parte motion without a hearing on October 7, 2011, construing it as a motion for reconsideration, and on October 12, 2011 issued an order granting Liberty's appeal and remanding to the SHPDA with instructions to hold the reconsideration hearing with an acting SHPDA administrator other than Administrator Terry.

On October 18, 2011, Liberty submitted a proposed final judgment to the court [9] which was objected to by both Rainbow and SHPDA. Liberty then submitted a revised proposed final judgment [10] on October 28, 2011, and the court *sua sponte* requested supplemental briefing on, among other

---

9. Liberty's original proposed final judgment is not contained in the record on appeal.

10. Liberty's amended proposed final judgment also is not contained in the record on appeal.

things, "issues related to *Waikiki Resort Hotel*[ ], 63 Haw. 222[, 624 P.2d 1353] and/or *Hui Malama Aina O Ko'olau*[ ], 4 Haw.App. 304[, 666 P.2d 177]."

SHPDA's supplemental brief stated that pursuant to the holdings of *Waikiki Resort Hotel* and *Hui Malama Aina O Ko'olau,* no new reconsideration hearing was needed, because even without the participation of Administrator Terry, "the Reconsideration Committee would be able to make a valid decision with fewer than all of the member to which it [was] entitled by [HRS] § 323D–47, provided it had the necessary quorum and majority." Liberty's supplemental brief argued that if the court were to consider Rainbow's untimely argument with respect to *Waikiki Resort Hotel* and *Hui Malama Aina O Ko'olau,* those cases are distinguishable. In its supplemental brief, Rainbow reiterated its arguments in its earlier ex parte motion for an expedited status conference, arguing that remand was not the appropriate remedy in light of the controlling decision of *Waikiki Resort Hotel.*

On December 13, 2011, the court issued an order that reversed its earlier position, and instead affirmed SHPDA's Reconsideration Decision. The court held that the Reconsideration Committee erred in failing to disqualify Administrator Terry, but that the failure to disqualify was harmless pursuant to *Waikiki Resort Hotel.* The court further affirmed the Reconsideration Committee's decision not to disqualify Trygstad. The court concluded that, *inter alia,* "the court cannot find that the Reconsideration Committee's determination that Dr. Talbot was not a party or party's representative ... was clearly erroneous under HAR § 11–1–25(a)(2) [,]" and "the Reconsideration Committee's refusal to disqualify Trygstad on [the] basis [of Trygstad's alleged bias because Dr. Talbot was her brother-in-law] was not clearly erroneous[.]" The court entered its Final Judgment on December 13, 2011.

Liberty appealed to the ICA on January 10, 2012, and the parties submitted briefs to the ICA. Transfer was granted from the ICA to this court on September 28, 2012.

On appeal, Liberty raised the following four points of error:

(1) The [ ] [c]ourt abused its discretion by reconsidering three of its prior orders and entertaining Rainbow's belated argument that the Reconsideration Committee's failure to disqualify [Administrator] Terry should be excused as harmless error under *Waikiki [Resort Hotel].*

. . . .

(2) The [ ] [c]ourt erred in concluding that the Reconsideration Committee's error in failing to disqualify [Administrator] Terry was harmless.

. . . .

(3) The Reconsideration Committee erred in refusing to disqualify [ ] Trygstad from serving on the Reconsideration Committee, and the [ ] [c]ourt erred in upholding this decision.

. . . .

(4) The Reconsideration Committee erroneously placed the burden of proof on Liberty rather than Rainbow.

(Emphasis added.)

On cross-appeal, Rainbow alleged that "[t]he circuit court erred when it determined in its December 13, 2011 Order that Administrator Terry should have been disqualified due to the application of HAR § 11–1–25 and based its Final Judgment on that portion of the December 13, 2011 Order." SHPDA did not file an appeal or cross-appeal, but did file a unified answering brief in response to both Liberty's and Rainbow's appeals.

## II.

### A.

First, as noted, HAR § 11–1–25 is the rule applicable to the matter of Trygstad's disqualification. Pursuant to its statutory authority, the DOH promulgated a number of administrative rules relating to DOH practices and procedures. Among these was HAR § 11–1–1 (2005), titled "Statement of scope and purpose" which discusses the applicability of the Chapter 1 rules to "attached entities." As noted before, HAR § 11–1–1(a) provides that:

§ 11–1–1 Statement of scope and purpose. (a) This chapter governs the practice

and procedure before the department of health, State of Hawai'i, provided that an attached entity may adopt and shall be governed by its own specific rules of practice and procedure if it has rulemaking authority, and provided that the director may adopt more specific rules of practice and procedure in proceedings for that program. Where such specific rules fail to cover particular practices and procedures, then these rules shall apply.

(Emphasis added.) Chapter 1 defines an "attached entity" as "an administrative office, agency, board, or commission placed or established within or administratively attached to the [DOH]." HAR § 11–1–3 (2005). SHPDA, as an agency that is part of the DOH, is an "attached entity." *See id.* "[T]hese rules" refers to the DOH practice and procedure rules in Title 11, Section 1 of the HAR.

Relevant to the instant case, the DOH also promulgated practice and procedure rule HAR § 11–1–25, which, as related previously, provides:

§ 11–1–25 Disqualification. (a) A hearings officer, director, or member of an attached entity is disqualified from hearing or deciding a contested case if the hearings officer, director, or member of the attached entity:

(1) Has a substantial financial interest as defined by section 84–3, [HRS], in a business or other undertaking that will be directly affected by the decision of the contested case;

(2) Is related within the third degree by blood or marriage to any party to the proceeding or any party's representative or attorney;

(3) Has participated in the investigation preceding the institution of the contested case proceedings or has participated in the development of the evidence to be introduced in the hearing; or

(4) Has substantially participated in making the decision or action contested; or

(5) Has a personal bias or prejudice concerning a party or matter that will prevent a fair and impartial decision involving that party or matter.

. . . .

(Emphases added.)

SHPDA, as an attached entity of the DOH, also has its own rules of practice and procedure, also found in Title 11, at Chapter 185. *See* HAR § 11–185–1 ("The rules in this chapter govern the practice and procedure before the state health planning and development agency."). As stated, subchapter 2 of Chapter 185 is titled "Public Hearing" and contains a rule titled "Disqualification of hearing officer," (emphasis added), which states:

Sec. 11–185–32 Disqualification of hearing officer (a) No hearing officer shall preside at any public hearing relating to any matter in which the hearing officer, the hearing officer's spouse, or the hearing officer's child has (or within twelve months preceding the hearing, had) any substantial ownership, directorship, officership, employment, prospective employment for which negotiations have begun, medical staff, fiduciary, contractual, creditor, debtor, consultative, pecuniary, or business interest.

(b) Where any other conflict of interest exists, the hearing officer shall be disqualified from presiding at the public hearing. The provisions of chapter 84, [HRS], and the decisions, advisory opinions, and informal advisory opinions of the state ethics commission shall serve as guidelines in determining whether a conflict of interest exists.

(Emphases added.)

In this case, whether Trygstad should have been disqualified depends in part upon which disqualification rule applies, the DOH's rule, HAR § 11–1–25, SHPDA's rule, HAR § 11–185–32, or both. On their faces, both HAR § 11–1–25 and HAR § 11–185–32 are applicable to motions for disqualification in SHPDA proceedings. Under the Title 11 regulatory scheme, HAR § 11–1–25 is applicable generally to hearings officers, directors, and members of an entity attached, such as SHPDA, and to the DOH. HAR § 11–185–32, SHPDA's rule is also applicable to hearing officer disqualifications. However, on its face, HAR § 11–185–32 applies only

to hearings officers, and <u>not</u> directors or members. Because HAR § 11–185–32 covers disqualification of hearings officers in SHPDA proceedings, it is a "specific rule[ ] of practice and procedure" that "govern[s]" in SHPDA proceedings. HAR § 11–1–1. Inasmuch as hearings officers are "specifically" covered by HAR § 11–185–32, HAR § 11–1–1 mandates that that part of HAR § 11–1–25 relating to hearings officers is superceded by HAR § 11–185–32. Thus, HAR § 11–185–32 controls over HAR § 11–1–25 with respect to hearings officers in SHPDA proceedings.

### B.

#### 1.

Based on the foregoing, HAR § 11–185–32, by its plain language, applies only to disqualifying a <u>hearing officer</u> from "presid[ing] at any public hearing." (Emphasis added.) Therefore, HAR § 11–185–32 is not applicable to "directors" or "members" of an attached entity. *See* HAR § 11–1–25. " 'Where the statutory language is plain and unambiguous, our sole duty is to give effect to is plain and obvious meaning.' " *Dejetley v. Kaho'ohalahala,* 122 Hawai'i 251, 262, 226 P.3d 421, 432 (2010) (quoting *Rees v. Carlisle,* 113 Hawai'i 446, 452, 153 P.3d 1131, 1137 (2007)). With respect to the interpretation of regulations, "the general principles of construction which apply to statutes also apply to administrative rules." *Kaleikini v. Yoshioka,* 128 Hawai'i 53, 67, 283 P.3d 60, 74 (2012) (brackets omitted) (citations omitted). On its face, then, HAR § 11–185–32 does not cover practices and procedures for disqualification of individuals <u>other than</u> hearings officers in reconsideration decisions, and therefore, HAR § 11–1–1 applies. Where "specific

rules fail to cover particular practices and procedures, then these rules shall apply." HAR § 11–1–1. As said, by "these rules," the DOH means the rules found in Title 11, Chapter 1, Rules of Practice and Procedure. By virtue of HAR § 11–1–1, HAR § 11–1–25 is one of "these rules."

HAR § 11–1–25 does expressly apply to directors and members. Hence, HAR § 11–1–25 would apply to members of SHPDA reconsideration committees. As a member of the Tri–Isle Subarea Council and the Reconsideration Committee, Trygstad is a "member" of an attached entity of the DOH. *See* HAR § 11–1–3 (defining "attached entity" as "an administrative office, agency board or commission placed or established within or administratively attached to the department"). Because HAR § 11–1–25 applies to members of attached entities, it applies to Trygstad. HAR § 11–1–25 then would apply to determine whether to disqualify Trygstad, as a member of a SHPDA Reconsideration Committee.

#### 2.

As noted, Trygstad's brother-in-law, Dr. Talbot, testified at the public meeting of the Tri–Isle Subarea Council and has a relationship with Kaiser. Under these facts, Trygstad could be disqualified from the Reconsideration Committee, pursuant to the DOH's rule, HAR § 11–1–25, in one of two ways. First, Trygstad could be disqualified because she "[i]s related within the third degree by blood or marriage to any party to the proceeding or any party's representative or attorney[.]" HAR § 11–1–25(a)(2) [11]. As noted, Dr. Talbot is Trygstad's brother-in-law, a relationship "within the third degree by blood or marriage." [12] HAR § 11–1–25(a)(2).

---

11. To reiterate, HAR § 11–1–25(a)(2) provides:
   (2) Is related within the third degree by blood or marriage to any party to the proceeding or any party's representative or attorney[.]

12. "[R]elated within the third degree" is a disqualifying relationship found in a number of statutes and rules addressing conflicts of interest. *See, e.g.,* HRS § 601–7 (Supp.2004) ("No person shall sit as a judge in any case in which ... [t]he judge's relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant[.]"); HRS § 651C–1

(1993) (" 'Relative' means an individual related within the third degree as determined by the common law, a spouse, or an individual related to a spouse within the third degree as so determined[.]"); HAR § 6–23–45 (2009) (Disqualifying a Department of Budget and Finance board member or hearing officer from hearing a case where they are related within the third degree by blood or marriage to a party or party's representative or attorney); HAR § 16–201–20 (1995) (Disqualifying a Department of Commerce and Consumer Affairs member of authority or hearings officer who is related within the third degree

There is a factual dispute as to whether Dr. Talbot, based on his involvement in the Tri-Isle Subarea Council public meeting, and his employment status, is connected to Kaiser and Rainbow closely enough to constitute a "party's representative" pursuant to HAR § 11–1–25(a)(2).

The other way in which Trygstad could be disqualified would be pursuant to HAR § 11–1–25(a)(5), which requires disqualification where a "hearings officer, director, or member of an attached entity[,]" "[h]as a personal bias or prejudice concerning a party or matter that will prevent a fair and impartial decision involving that party or matter." Under subsection (a)(5), Trygstad could be disqualified if the involvement of her brother-in-law Dr. Talbot in the proceedings and his relationship with Rainbow created a bias or prejudice on the part of Trygstad that would influence her decision.

## C.

The majority holds that with respect to SHPDA proceedings, SHPDA's disqualification rule, HAR § 11–185–32 applies to the exclusion of the DOH disqualification rule, HAR § 11–1–25. Majority's opinion at 111, 306 P.3d at 156. HAR § 11–185–32, the majority maintains, is a specific rule that governs SHPDA's practices and procedures with respect to disqualifications. Majority's opinion at 110, 306 P.3d at 155. According to the majority, since, pursuant to HAR § 11–1–1, an attached entity "shall be governed by its own specific rules of practice and procedure[,]" and the DOH Title 11, Chapter 1 rules only apply where the attached entity's rules "fail to cover particular practices and procedures," all disqualifications in SHPDA

reconsideration proceedings are governed solely by HAR § 11–185–32. Majority's opinion at 110, 306 P.3d at 155.

However, the majority's position conflicts with the plain language of HAR § 11–185–32. Both subsections in HAR § 11–185–32 are applicable only to hearings officers. HAR § 11–185–32(a) states that "[n]o hearing officer shall preside at a public hearing relating to any matter in which ... [,]" (emphasis added), and HAR § 11–185–32(b) states that "[w]here any other conflict of interest exists, the hearing officer shall be disqualified...." (Emphasis added).[13] On the other hand, an interpretation of the Title 11 rules that would apply HAR § 11–1–25 to disqualification of SHPDA reconsideration hearing members and directors, and HAR § 11–185–32 to disqualification of hearings officers, would ensure a fair procedure while recognizing the authority of SHPDA to promulgate its own rules of practice and procedure that cover specific circumstances.

## III.

In this case, SHPDA's interpretation, adopted by the majority, characterizes each of the Reconsideration Committee members as "hearing officers." The majority maintains that SHPDA's interpretation of its own rules should be afforded deference. Majority's opinion at 111, 306 P.3d at 156. However, as the majority acknowledges, an agency's interpretation of its own rules is not entitled to deference if its interpretation is " 'plainly erroneous or inconsistent with the underlying legislative purpose.' " *Kaleikini*, 128 Hawai'i at 67, 283 P.3d at 74 (quoting *In re Wai'ola O Moloka'i Hawai'i, Inc.*, 103 Hawai'i 401, 425, 83 P.3d 664, 688 (2004)). SHPDA's interpretation of the term "hearing

by blood or marriage to any party to the proceeding or any party's representative or attorney); HAR § 17–2–14 (1995) (Disqualifying a Department of Human Services director or hearing officer who is related within the third degree by blood or marriage to any party.).

**13.** The majority also contends that although Liberty argued before the circuit court that Reconsideration Members were not hearings officers, and therefore HAR § 11–185–32 should not apply to Reconsideration Members, it no longer presents that argument on appeal. Majority's opinion at 111, 306 P.3d at 156. However, the

position reflected in this opinion is consistent with Liberty's argument on appeal that both rules should be given effect. With respect to disqualification, HAR § 11–185–32 should apply to hearings officers, and HAR § 11–1–25 should apply to Reconsideration Committee members. While Liberty argues that both rules should apply for different reasons, the issue in this case is the interaction of provisions in and implementation of a regulatory scheme. Accordingly, this court must determine the appropriate application of that regulatory scheme based on a correct interpretation of the language of the rules.

officer" in HAR § 11–185–32 is clearly erroneous inasmuch as it conflicts with the plain language of HAR § 11–185–32, and with SHPDA's regulatory scheme as a whole. Rather than simply acknowledging that SHPDA's attached entity rules, as adopted in the early 1980s[14], did not explicitly provide disqualification rules for reconsideration committee members, and that as a result, the general gap-filling rules, i.e. HAR § 11–1–25, should apply, SHPDA attempts to circumvent the plain language of the administrative scheme.

## A.

The majority reasons that construing HAR § 11–185–32 in pari materia with HRS § 323D–47 and the other SHPDA rules leads to the conclusion that each of the reconsideration members is a "hearings officer." Majority's opinion at 111–12, 306 P.3d at 156–57. The majority states that HRS § 323D–47 and HAR § 11–186–82(d) require that a reconsideration committee hold a public hearing, if good cause is shown for reconsideration. *Id.* In addition to the public hearing, reconsideration members also take part in a written reconsideration decision and file that decision. There is no dispute that the Reconsideration Committee hearing in this case was a public hearing. None of the actions attributable to the reconsideration committee, however, leads to the conclusion that they are also hearings officers. Thus, the materiality of these provisions to the majority's position is lacking.

HRS § 323D–47, the statute providing authority for rules related to reconsideration, HAR § 11–186–82, the SHPDA rule setting out reconsideration procedures, and HAR § 11–185–30, setting out the procedures for SHPDA public hearings generally, merely set forth the procedural requirements for reconsideration. These provisions do not sustain the majority's view that each member of the reconsideration committee is a hearing officer, but, as verified by the facts in this

case, indicate to the contrary, that the hearing officer is <u>one</u> individual.

The majority's in pari materia argument is also, respectfully, inapposite because different authorities designate the reconsideration committee members and the hearing officers. HRS § 323D–47 designates the members of the reconsideration committee by statute. *See* HRS § 323D–47 ("<u>The reconsideration committee shall</u> consist of the administrator of the state agency and the chairpersons of the statewide council, the review panel, the plan development committee of the statewide council, and the appropriate subarea health planning council.") (emphasis added). HRS § 323D–47 does not at any point indicate that all members of the reconsideration committee shall also serve as the hearing officers in the reconsideration committee. On the other hand, the hearing officer is designated by the agency. HAR § 11–185–31 provides that "[t]he agency shall designate the hearing officer who shall preside at the public hearing." (Emphasis added.) The "agency" referred to is SHPDA. *See* HAR § 11–185–2. Thus, reading the statutory scheme and rules together, i.e., in pari materia, in fact demonstrates that hearing officers and reconsideration members are not one and the same.

## B.

The majority also maintains that the Reconsideration Members did "preside" at the public hearing, inasmuch as they made rulings on evidentiary objections and motions. Majority's opinion at 112, 306 P.3d at 157. Respectfully, it would be a mischaracterization to say that the Reconsideration Committee members "presided" at the public hearing. The portions of the transcript that the majority cites do not indicate any active participation in running the hearing itself by any members of the Reconsideration Committee

14. In support of its position, SHPDA argues that the SHPDA rules preceded the DOH rules. *See* Majority's opinion at 111, 306 P.3d at 156. Respectfully, the timing of the rules has nothing to do with which rule takes precedence. Neither HAR § 11–1–25 nor HAR § 11–185–32 have been repealed, and thus both are valid and must be applied. Indeed, the fact that the DOH rules,

which are arguably more restrictive with respect to disqualification (requiring disqualification based on relationships "within the third degree," for example), were adopted <u>after</u> the SHPDA rules (which require disqualification based on spousal and child relationships), evinces a trend toward more comprehensive conflict of interest rules, consistent with this opinion.

other than Administrator Terry.[15] To the extent that the Reconsideration Committee as a whole voted on the motions and presentation of exhibits, it did so off the record and not during the hearing itself. Thus, the Reconsideration Committee members were present, but did not "preside" over the hearing.

The majority urges that <u>nothing</u> in HAR § 11–185–31, which states that "[t]he agency shall designate the hearing officer who shall preside at the public hearing[,]" specifically excludes all reconsideration committee members from the "hearing officer" disqualification provisions of HAR § 11–185–32. Majority's opinion at 112, 306 P.3d at 157. However, this is unsurprising, because HAR § 11–185–31 does not specifically deal with reconsideration decisions, and, it would be repugnant to the plain language of HAR §§ 11–185–31 and –32 to find that each reconsideration committee member is a "hearings officer" in the first place.

### C.

Furthermore, the rules governing CON Application proceedings, and the reconsideration committee specifically, in Chapter 186 [16], are separate and apart from the rules cited by the majority from Chapter 185 (including HAR §§ 11–185–30, –31, and –32), and make no reference to "hearing officers." In contrast, HAR § 11–186–3 defines "Reconsideration committee" as "the reconsideration committee as established in section 323D–47, [HRS]." As noted, HRS § 323D–47 does not state that reconsideration committee members are also all "hearing officers" in the reconsideration committee hearings. Consequently, the SHPDA rules applicable to CON proceedings do not support the view that the Reconsideration Committee members were also all hearing officers in the proceedings.

HAR § 11–186–51 [17] is the conflicts of interest provision in Chapter 186 that governs conflicts of members in actions by the committees named, none of which is the reconsideration committee. Although other provisions in Chapter 186 refer to the reconsideration committee, the plain language of HAR § 11–186–51(a) states that it only applies to members of "a subarea council, a countywide review committee, the review panel, or the statewide council...." HAR § 11–186–51(b), in turn, provides that the conflict provisions in HAR § 11–186–51 only apply to "<u>actions</u>" taken "<u>by the subarea council, countywide review committee, review panel, or statewide council to which the member belongs</u>...." (Emphases added.) This is also reiterated in subsection (c), which, again applies only to members of the subarea council, countywide review committee, review panel, or statewide council. HAR § 11–186–51(c). On its face, the conflicts rule applies to persons acting as members of the named committees in ac-

---

**15.** Mr. Wynhoff, as referenced in the transcript, is the attorney for the Reconsideration Committee.

**16.** HAR § 11–186–1 provides, in part: "The rules in this chapter govern procedure before the state health planning and development agency, the statewide health coordinating council, the review panel, <u>the reconsideration committee,</u> the countywide review committee, and the subarea health planning councils." (Emphasis added.)

**17.** HAR § 11–186–51 provides:
Sec. 11–186–51   Conflicts of interest.
(a) <u>No member of a subarea council, a countywide review committee, the review panel, or the statewide council</u> shall vote on any matter respecting an applicant with which the member, the member's spouse, the member's child, or the member's parent has (or within the twelve months preceding the vote, had) any substantial ownership, directorship, officership, employment, prospective employment for which negotiations have begun, medical staff, fiduciary, contractual, creditor, debtor, or consultative relationship.
(b) If such a relationship exists or has existed, the member shall make a written disclosure of the relationship <u>before any action is taken with respect to the applicant by the subarea council, countywide review committee, review panel, or statewide council to which the member belongs</u> and the member shall make the relationship public in any meeting in which action is to be taken with respect to the applicant.
(c) <u>Where any other conflict of interest exists, a member of a subarea council, countywide review committee, review panel, or statewide council</u> shall be disqualified from voting in the review of an application. The provisions of chapter 84, Hawaii Revised Statutes, and the decisions, advisory opinions, and informal advisory opinions of the state ethics commission shall serve as guidelines in determining whether a conflict of interest exists.
(Emphases added.)

tions taken by <u>those</u> committees. The rule has nothing to do with the reconsideration committee or actions taken by the reconsideration committee. Thus, this conflicts provision does not apply to reconsideration committees inasmuch as specifically named committees would indicate a committee such as the reconsideration committee is excluded from the scope of HAR § 11–186–51. *See Sierra Club v. Dep't. of Transp. of State of Hawai'i,* 120 Hawai'i 181, 233, 202 P.3d 1226, 1278 (2009) ("This court has consistently applied the rule of <u>expressio unius est exclusio alterius</u>—the express inclusion of a provision in the statute implies the exclusion of another—in interpreting statutes.") (citation omitted) (ellipses omitted).

### D.

The majority appears also concerned that, if the DOH rule, HAR § 11–1–25 applies to reconsideration committee members, then SHPDA's rules lacked any disqualification provisions for reconsideration committee members for almost 20 years. Majority's opinion at 112, 306 P.3d at 157. But if this were the case, it would not pose an "absurdity." As the court noted, due process requires that a decision maker be disqualified if that individual displays obvious animus or bias against a party.[18] The majority itself asserts that hearings officers would be subject to disqualification via due process where they exhibit bias or prejudice, or where there is an appearance of impropriety or partiality, in the absence of any governing disqualification statute or rule. *See* majority's opinion at 108 n. 20, 38–40, 306 P.3d at 153 n. 29, 155–56 (citing *State v. Ross,* 89 Hawai'i 371, 377, 974 P.2d 11, 17 (1998)). *See also State v. Brown,* 70 Haw. 459, 467, 776 P.2d 1182, 1187 (1989) (" '[a] fair trial in a fair tribunal is a basic requirement of due process.' ") (quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). Aside from due process, I note that other case law would apply. For example, "[t]he common law doctrine of incompatible offices prohibits an individual from serving in dual capacity 'if one

office is subordinate to the other or the functions of the offices are inherently inconsistent an repugnant to each other.' " *In re Water Use Permit Applications,* 94 Hawai'i at 120, 9 P.3d at 433 (quoting *State v. Villeza,* 85 Hawai'i 258, 270, 942 P.2d 522, 532 (1997)).

Further, DOH exercised its authority to implement gap-filling rules in HAR Chapter 11, subchapter 1, to attached entities, recognizing that there may have been gaps in the procedural rules of such entities. *See* HAR § 11–1–1 ("Where such specific [attached entity] rules fail to cover particular practices and procedures, then these rules shall apply."). There is no indication that SHPDA had applied HAR § 11–185–32 to anyone other than hearing officers prior to the 2005 enactment of the current version of HAR Chapter 11, subchapter 1. The DOH's rules continue to be in force and effect today, regardless of the status of the administrative scheme between the enactment of the SHPDA rules and the enactment of the DOH gap-filling rules. The intervening period does not justify the application of HAR § 11–185–32, pertaining to conflicts of hearing officers, to reconsideration committee members plainly covered by HAR § 11–1–25 as a result of HAR § 11–1–1.

### E.

Both the SHPDA rules at Chapter 185 that govern SHPDA proceedings generally envision the hearing officer to have a particular role during public hearings. In Chapter 185, as noted, HAR § 11–185–31 provides that "[t]he agency shall designate <u>the hearing officer</u> who shall preside at the public hearing. The hearing officer shall have authority to take any and all actions necessary to the orderly and just conduct of the hearing." (Emphasis added.) Further, HAR § 11–185–35 states, "[t]o avoid unnecessary cumulative evidence at the public hearing, <u>the hearing officer</u> may limit the time for witnesses to testify upon a particular issue." (Emphasis added.) These provisions indicate that in this case, Hearing Officer Tseu was the hearings officer under the SHPDA rules,

---

**18.** The court's discussion of these due process requirements arose in the context of Administrator Terry's potential disqualification, however, such considerations would be equally applicable to Trygstad or the other Reconsideration Committee members.

inasmuch as he was responsible for time-keeping and the orderly conduct at the public hearing on the reconsideration.

Nowhere in the hearing officer provisions does it state that the reconsideration members are "hearing officers," and nowhere in the transcripts does it indicate each reconsideration member was a "hearing officer," as that term is described in the rules. Instead, in the hearings, Hearing Officer Tseu was consistently referred to as the "hearing officer." Trygstad, as a member of the Reconsideration Committee, was never referred to as a "hearings officer." That much is clear in the record, and cannot be reasonably disputed. Respectfully, to find otherwise would impose a legally absurd construction on SHPDA's regulatory scheme and on the nature of the proceedings that took place. *See Sierra Club,* 120 Hawai'i at 228, 202 P.3d at 1273 ("This court has stated that it is well-settled that statutory construction dictates that an interpreting court should not fashion a construction of statutory text that . . . creates an absurd or unjust result.") (internal quotation marks and citation omitted).

Reading the SHPDA rules in pari materia indicates that all reconsideration committee members are definitely not also all hearings officers. The agency's interpretation of Trygstad as a hearings officer, and the majority's affirmation of that interpretation, is contrary to the plain letter of the law—statutes and regulations, and the overall administrative scheme established by the rules. This is also evidenced by how the rules actually operated in this case, where Andrew Tseu was the designated hearing officer. Thus, SHPDA's interpretation of the rules is

plainly erroneous and cannot be afforded deference by this court.

IV.

Second, respectfully, in my view, the court's affirmation of SHPDA's denial of Liberty's motion to disqualify Trygstad was incorrect. There is an ongoing factual dispute in the record as to the extent of Dr. Talbot's involvement with Kaiser. Additionally, there appears to be a factual disagreement with respect to Liberty's contention that Trygstad should have been disqualified pursuant to HAR § 11–1–25(a)(5) for other bias or prejudice resulting from her relationship with Dr. Talbot. " 'Review of a decision made by a court upon its review of an administrative decision is a secondary appeal.' " *Chung Mi Ahn v. Liberty Mut. Fire Ins. Co.,* 126 Hawai'i 1, 9, 265 P.3d 470, 478 (quoting *Brescia v. North Shore Ohana,* 115 Hawai'i 477, 491, 168 P.3d 929, 943 (2007)). Accordingly, the court's determinations are reviewed *de novo. Id.*

As noted, during the agency proceedings, SHPDA had denied both of Liberty's motions to disqualify Terry and Trygstad. The court's Order affirming the Reconsideration Decision suggests that the agency provided reasons for its decisions on both motions. To reiterate, in fact, the agency did not state any reasons on the record for its decisions. Thus, it cannot be assumed that SHPDA applied HAR § 11–1–25.[19] However, the court appears to have assumed that SHPDA did apply HAR § 11–1–25, and thus the court did not consider whether, pursuant to HRS § 91–14(g)(4), the agency's determination was affected by an "other error of law,"[20]

**19.** In its Answering Brief on appeal, SHPDA briefly describes the proceedings on the motions for disqualification, and sets forth the party's arguments during the agency proceedings with respect to Administrator Terry and Trygstad's disqualification. The brief states that, regarding Administrator Terry's disqualification, "SHPDA countered that (1)[HRS] § 323D–47 [ ], provides that the Administrator issues the Decision on the Merits, participates on the Reconsideration Committee an serves as its chairperson; (2) SHPDA's specific rule of practice and procedure, [HAR] chapter 11–185[ ], did not require the Administrator's disqualification; and (3) Liberty failed to produce any evidence of the Administrator's alleged personal bias or prejudice other than the conditional granting of Rainbow's CON [a]pplication in the Decision on the Merits." (Emphasis added.) However, based on the record, it appears that SHPDA's brief meant to designate those as Rainbow's arguments rather than SHPDA's arguments.

**20.** HRS § 91–14(g) provides, in relevant part, that:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the

namely, applying the wrong disqualification rule. The court thus erred when it affirmed the Reconsideration Committee's retention of Trygstad.

In its Answering Brief, SHPDA explained that "[w]hile [SHPDA] would have analyzed the disqualification claim [regarding Trygstad] in terms of the provisions of [HRS] § 323D–47 and SHPDA's specific disqualification rule to reach the same conclusion for different reasons, [SHPDA] asserts that the [ ] [c]ourt's rulings were not clearly erroneous...." (Emphasis added.) Thus, on appeal, SHPDA alleged that HAR § 11–1–25, relating to third degree relationships, should not apply to Trygstad.

As a result, this case must be remanded to SHPDA, see HRS § 91–14(g), for the agency to apply HAR § 11–1–25 in making an on the record determination as to whether or not Trygstad should have been disqualified because her brother-in-law, Dr. Talbot, may have been a "party's representative," see HAR § 11–1–25(a)(2), or because she had a "personal bias or prejudice" concerning the matter as a result of Dr. Talbot's involvement, see HAR § 11–1–25(a)(5).

## V.

Third, Trygstad's disqualification was not harmless. On appeal, Liberty contends that the "[c]ourt erred in concluding that the Reconsideration Committee's error in failing to disqualify Administrator Terry was harmless." The majority, in concluding that neither Administrator Terry nor Trygstad needed to be disqualified, does not reach this argument. However, because I would remand to SHPDA to determine whether Trygstad's disqualification from the Reconsideration Decision was required, the court's holding with respect to *Waikiki Resort Hotel* must be addressed.

The court held that in *Waikiki Resort Hotel*, this court "squarely addressed, and rejected, the theory that the vote of one member who should have been disqualified

administrative findings, conclusions, decisions, or orders are:

. . .

  (4) Affected by other error of law [ ]

  . . . .

contaminates the votes of the remaining members, where ... a majority decision still resulted with those remaining members." In this case, all four members of the Reconsideration Committee voted in favor of the Reconsideration Decision. In my view, however, the court interpreted the holding in *Waikiki Resort Hotel* too broadly, and that, in some circumstances, the vote of one member who should have been disqualified may contaminate the votes of the other qualified members.

### A.

In *Waikiki Resort Hotel*, the plaintiff challenged the decision and order of the Building Board of Appeals of the City and County of Honolulu (the Board), which had affirmed the issuance of a building permit. *Id.* at 231, 624 P.2d at 1361. Plaintiff raised the question, *inter alia*, of whether the Board erred in denying plaintiff's petition that the building permit be declared void and revoked, because one of the Board members (Kellett) who participated in the decision to deny the petition, had a conflict of interest. *Id.*

At a board meeting prior to the ultimate decision, Kellett disclosed that he would be negotiating a contract, as a general contractor, to construct a steel structure in the project covered by the building permit at issue. *Id.* at 246, 624 P.2d at 1370. Kellett had "stated that he felt he could 'render a full and impartial vote,' but wanted the Board to be aware of 'the possible conflict.' " *Id.* After considering the issue at the meeting, the Board voted that Kellett did not have to disqualify himself and could be a participant at the hearing. *Id.* At the time of the vote, seven of the eight members of the Board were present, and all seven voted in favor of the defendant. *Id.* at 247, 624 P.2d at 1370. At the next meeting, six members of the Board were present, and all six voted to approve the Board's findings of fact, conclusions of law, and the decision and order. *Id.*

On review of an administrative decision, conclusions of law are reviewed under, *inter alia*, subsection (4). *Sierra Club v. Office of Planning*, 109 Hawai'i 411, 414, 126 P.3d 1098, 1101 (2006).

This court considered "whether Kellett's participation in the Board action and in the Board decision and order ... vitiated the Board decision and order, although, even without counting his vote, the Board action ... had the affirmative votes of seven members, or two more than the five votes required under the applicable ordinance provision, and the Board decision and order had the affirmative votes of six members, or one more than the required five votes." *Id.* It was acknowledged that the "decisions are not uniform, even in cases where the participating member was clearly disqualified because of his present and immediate interest in the result or by reason of violation of applicable conflict of interest provision of a statute, charter, ordinance, or regulation." *Id.* Further, this court concluded that the Board's action was "in accord with" the reasoning in *Marshall v. Ellwood City Borough,* 189 Pa. 348, 41 A. 994 (1899) and "the facts in [*Waikiki Resort Hotel* ] are practically identical with the facts recited in the quoted statement [from *Marshall]*[,] " and sustained the Board's vote. *Id.* at 249, 624 P.2d at 1371.[21]

But, other than to say, "[w]e are in accord with the foregoing reasoning," this court did not further discuss the quote. Rather, it was not clear if Kellett in fact should have been disqualified. *Id.* at 249, 624 P.2d at 1371. *Waikiki Resort Hotel* explained that, "there is some question as to whether the section [that would disqualify an appointed officer of the city or county under certain circumstances] applied to Kellett, in that, at the time he participated in the Board decision and order, he did not possess, and had not yet acquired any conflicting interest, the matter disclosed by him to the Board being prospective and contingent." *Id.* at 250, 624 P.2d at 1372. Thus, it appears this court's affirmation of the vote was conditioned by the question of whether Kellett was in fact in conflict at the time of the vote.

Furthermore, this court observed that there was a dispute in *Waikiki Resort Hotel* over whether "Kellett was clearly disqualified from participating in the Board decision and order" in the first place. *Id.* at 249, 624 P.2d at 1371. Pursuant to the Honolulu City and County Charter, an individual with a conflict of interest was required to file a written disclosure, but "upon the filing of the required disclosure, <u>such member was eligible to vote on the proposal.</u>" *Id.* (Emphasis added.)

Also, this court's citation to *Marshall* does not mean that this court adopted a per se rule for all future cases. In the quoted passage from *Marshall,* the *Marshall* court explained that, " '[w]e know of no reason, <u>in the present case,</u> why the invalid vote of one member of the council should be held to invalidate the perfectly legal vote of the other four members.' " *Id.* at 248, 624 P.2d at 1371 (quoting *Marshall,* 41 A. at 995) (emphasis added).

### B.

*Waikiki Resort Hotel* thus does not mandate, as a singular proposition, that an error in failing to disqualify any decision maker in an administrative decision is harmless so long as that individual did not cast the deciding vote. Rather, the impact of an erroneous failure to disqualify a member of an administrative board should be considered on a case by case basis. As *Waikiki Resort Hotel* points out in the quoted *Marshall* passage, "[i]t would be an astonishing proposition to submit that an ordinance in a body of fifty or one hundred members which was passed by a considerable majority of perfectly qualified votes, should be declared illegal because it had received the supporting vote of one member who was disqualified." *Id.* at 248, 624 P.2d at 1371 (quoting *Marshall,* 41 A. at 995). Rather, a case by case inquiry must be conducted to determine whether, taking the facts and circumstances of the decision-mak-

---

**21.** The language quoted from *Marshall* stated in part that,

[w]hile it must be conceded that, if a majority of those voting for the ordinance, or even one vote, if that vote determined the passage of the ordinance, would establish the invalidity of the ordinance, we cannot think that such a conse-

quence would result from the mere fact that there was only one member of the council who had an opposing interest, and the ordinance was passed by a majority of legally competent members without any reference to his vote. *Id.* at 248–49, 624 P.2d at 1371 (quoting *Marshall,* 41 A. at 995).

ing into account, an individual may have had an influence on the outcome that extended beyond his or her vote.

[S]everal strong reasons exist for invalidating decisions even when a tainted decision maker's vote was numerically unnecessary for the decision. First, courts invalidating such decisions have noted that collegial decision making ideally involves the exchange of ideas and views, often with the intent of persuading toward a particular position.[ ] The actual contribution of any particular decision maker cannot be measured with precision, but frequently extends significantly beyond the actual vote cast.[ ] For this reason, a significant threat to accuracy can exist even when a particular vote was numerically unnecessary for the decision.

For similar reasons legitimacy concerns also exist even when a vote is numerically unnecessary. Although legitimacy concerns are less substantial in such circumstances, the perception of collegial decision making and the potential influence of a tainted decision maker on others would violate "appearance of fairness" standards. Thus, for both accuracy and legitimacy reasons the better view is that even when a vote is numerically unnecessary for a decision, courts should still invalidate it.

Mark W. Cordes, "Policing Bias and Conflicts of Interest in Zoning Decisionmaking," 65 N.D. L.Rev. 161, 212 (1989) (emphases added).

The supreme court of Alaska adopted an analogous approach in *Griswold*, 925 P.2d at 1028.[22] In that case, there were six voting members of the Homer City Council, and five voted in favor of a particular ordinance on its first reading, with one member absent. *Id.* at 1027. On the second and final reading, again five voted in favor of the ordinance and one was absent. *Id.* The supreme court held that one of the voting members had a conflict of interest that would have required disqualification from the voting. *Id.*

The *Griswold* court declined to adopt what it characterized as a "vote-counting" approach, namely, one that would uphold the vote where a disqualified member's participation and vote will not invalidate the result because the required majority exists without the vote of the disqualified member. *Id.* at 1027 (citing *Waikiki Resort Hotel*, 63 Haw. at 247, 624 P.2d at 1371; *Singewald v. Minneapolis Gas Co.*, 274 Minn. 556, 142 N.W.2d 739 (1966); *Anderson v. City of Parsons*, 209 Kan. 337, 496 P.2d 1333 (1972); *Eways v. Reading Parking Auth.*, 385 Pa. 592, 124 A.2d 92 (1956)). In rejecting this approach, *Griswold* reasoned that "[a] council member's role in the adoption or rejection of an ordinance cannot necessarily be measured solely by that member's vote. A conflicted member's participation in discussion and debate culminating in the final vote may influence the votes of the member's colleagues." *Griswold* further stated that, "[m]oreover, the integrity required of public officeholders demands that the appearance of impropriety be avoided; the approach adopted in *Waikiki* [*Resort Hotel*] will not always do so." *Id.* at 1028, 624 P.2d 1353 (citations omitted).

The Alaska supreme court also rejected the "automatic invalidation" approach, wherein "a vote cast by a disqualified member vitiates the decision in which the member participated, even if the vote does not change the outcome of the decision." *Id.* (citing *Waikiki Resort Hotel*, 624 P.2d at 1370; *Piggott v. Borough of Hopewell*, 22 N.J.Super. 106, 91 A.2d 667 (1952); *Baker v. Marley*, 8 N.Y.2d 365, 208 N.Y.S.2d 449, 170 N.E.2d 900 (1960); *Buell v. City of Bremerton*, 80 Wash.2d 518, 495 P.2d 1358 (1972)). It reasoned that "[t]he vote and participation of a conflicted member will not invariably alter the votes of other members or affect the merits of the council's decision." *Id.* "This is especially true," the *Griswold* court noted, "if the conflict is disclosed or well-known, allowing other members to assess the merits of the conflicted member's comments in light of his or her interest." *Id.* The Alaska court concluded that "[a]utomatic invalidation has

---

**22.** The *Griswold* court stated that, "[w]e decline to follow the vote-counting approach adopted in *Waikiki* [*Resort Hotel*][.]" 925 P.2d at 1028. However, as discussed above, a precise reading of the holding in *Waikiki Resort Hotel* does not mandate the per se vote-counting approach referred to in *Griswold*.

the potential for thwarting legislative enactments which are not in fact the result of improper influence." *Id.*

Instead of following either of these approaches,[23] that court reasoned that "[i]n determining whether the vote of a conflicted member demands invalidation of an ordinance, courts should keep in mind the two basic public policy interests served by impartial decision-making: accuracy of decisions, and the avoidance of the appearance of impropriety."[24] *Id.* (citing Cordes, *supra,* at 212).

In my view, an approach to decisions involving disqualified members that is grounded in an accuracy and legitimacy rationale would lead to fairer results. In order to maintain legitimacy and accuracy, "disqualification rather than disclosure is the preferable approach." Cordes, *supra,* at 214. Disqualification maintains the appearance of fairness, because it remedies any perception of "the potential influence of a tainted decision maker." *Id.* at 216. However, invalidation of the agency's vote is not required in every case. Where the threat to the legitimacy of a decision is de minimis, there is no need for disqualification. For example, where a large number of decision makers vote on a particular measure and the "decision appears inevitable[,]" "the administrative burden of invalidating and remanding a

decision outweighs any threat to substantive results and perceptions of fairness." *Id.*

On the other hand, "a significant threat to accuracy can exist even when a particular vote [is] numerically unnecessary for [a] decision." *Id.* Where the decision maker would have a *substantial impact on the decision making process,* the vote should be invalidated regardless of whether the disqualified member casts the deciding vote. In order to determine where a particular decision maker would have a substantial impact, a consideration of the three factors set forth in *Griswold* becomes apropos: (1) whether the member disclosed the interest or the other group members were fully aware of it; (2) the extent of the member's participation in the decision; and (3) the magnitude of the member's interest. *Griswold,* 925 P.2d at 1029.

As compared to an accuracy and legitimacy approach, a "vote-counting" rule that would uphold a decision regardless of disqualification, so long as the disqualification would not have applied to the deciding vote would depreciate the substantial effect or influence a disqualified member may have on the other members of the voting group, especially when such disqualification may be motivated by improper motive such as self interest, bias, or prejudice. Correlatively, as compared to an accuracy and legitimacy ap-

---

**23.** Other jurisdictions have similarly rejected the all-or-nothing approaches of automatic invalidation or invalidation only where the disqualified member cast the deciding vote. *See Hanig v. City of Winner,* 692 N.W.2d 202, 210 (S.D.2005) (holding that where there was a failure to disclose a conflict of interest by a council member, the plaintiff was entitled to a new hearing); *Sohocki v. Colorado Air Quality Control Comm'n.,* 12 P.3d 274, 279 (Colo.App.1999) (adopting the balancing test set out in *Griswold* ).

**24.** I would take a somewhat different approach from the method adopted by the Alaska supreme court. That court emphasizes disclosure, and requires that there be an "intolerable" appearance of impropriety before a vote or action must be invalidated. *See Griswold,* 925 P.2d at 1029. *Griswold* adopted the following test:

If the interest [of a conflicted member] is undisclosed, the ordinance will generally be invalid; it can stand only if the magnitude of the member's interest, and the extent of his or her participation, are minimal. If the interest is disclosed, the ordinance will be valid unless

the member's interest and participation are so great as to create an <u>intolerable appearance of impropriety.</u> The party challenging the ordinance bears the burden of proving its invalidity.

*Id.* (Emphasis added). However, *Cordes* favors disqualification over disclosure. *Cordes, supra,* at 214 (noting that "perceptions of fairness and legitimacy are only partly addressed by disclosure."). Also, whether the appearance of impropriety is "intolerable" is difficult to measure and strongly subjective. "Substantial," on the other hand, is a commonly used legal term of art. *See, e.g., Black's Law Dictionary* 1565–66 (9th ed. 2009) (defining, *inter alia,* "substantial-capacity test," "substantial-cause test," "substantial-certainty test," "substantial-continuity doctrine," "substantial equivalent," and "substantial-evidence rule"). Thus, rather than adopting the "intolerable appearance of impropriety" standard in determining when disqualification is appropriate, I would require that the decision maker's impact on the decision be "substantial."

proach, an "automatic invalidation" rule that would invalidate a vote every time a disqualified member took part in the vote would engender the impractical and unreasonable result of declaring illegal a decision adopted "by a considerable majority of perfectly qualified votes," because the supporting vote of one, or a few members were disqualified. *Waikiki Resort Hotel,* 63 Haw. at 248, 624 P.2d at 1371.

## C.

Assuming that Trygstad should have been disqualified, I would hold that Trygstad's participation in the Reconsideration Decision would render it void. In this case, Trygstad would have had a substantial impact on the decision. As to factor (1), in this case it appears that Trygstad did in fact disclose her brother-in-law's employment on the record for the Reconsideration Hearing. However, a number of other facts relevant to factors (2) and (3) indicate that Trygstad had a substantial impact.

The Reconsideration Committee was convened because the decision of the Administrator differed from the recommendation of the Statewide Council. HRS § 323D–47(5). In fact, two of the three SHPDA advisory panels had recommended that the CON Application be rejected, but Administrator Terry had conditionally approved the CON Application in his Decision on the Merits. As a participant in the Tri–Isle Subarea Health Planning Council, Trygstad had voted in favor of the CON Application. On reconsideration, the Reconsideration Committee was composed of only five members. Thus, Trygstad's vote represented twenty percent of the vote on the Reconsideration Decision.

On January 3, 2011, the Reconsideration Committee held a public hearing. The Reconsideration Committee then had forty-five days to file a decision. The Reconsideration Decision stated that "[t]he Reconsideration Committee ... has considered the written and oral testimony, exhibits, arguments and other filings submitted by [Rainbow], [Liber-

ty], [SHPDA] and other affected persons, the recommendations of the Tri–Isle Subarea Health Planning Council, the Certificate of Need Review Panel, and the Statewide Health Coordinating Council." The Reconsideration Decision consisted of Findings of Fact, Conclusions of Law, Order and Written Notice and was signed by all five members of the Reconsideration Committee.

Under these circumstances, Trygstad's participation in the decision substantially impacted the ultimate decision of the Reconsideration Committee during the deliberation process. "[T]he actual contribution of any particular decision maker cannot be measured with precision, but frequently extends significantly beyond the actual vote cast.[ ]" Cordes, *supra,* at 212. The size of the Reconsideration Committee in this case was small, only consisting of five members. Furthermore, the deliberation process was out of the public view during the period between the public hearing and when the Reconsideration Committee was required to file a decision. Finally, it is undisputed that Trygstad's brother-in-law, Dr. Talbot, participated in prior public hearings and testified in support of Rainbow's CON Application. Thus, Trygstad's impact on the decision was substantial. Under such circumstances, the Reconsideration Decision would be set aside, and a new Reconsideration Decision with a reconstituted Reconsideration Committee ordered.

## VI.

Because I would remand the case, Liberty's fourth point of error with respect to the allocation of the burden of proof must also be discussed. On appeal to the court and before this court, Liberty alleged that the burden of proof was improperly placed on Liberty for the Reconsideration Decision.[25]

HRS § 91–10(5) (2003) provides that, "[e]xcept as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion." (Emphasis added.) As noted,

---

**25.** Liberty does not challenge the court's conclusion that Liberty's failure to allege error in allocating the burden of proof before the Reconsideration Committee precludes it from raising this

point of error as a ground for reversal of the Reconsideration Decision on appeal. Thus, this point of error is addressed only for advisement if the case were to be remanded.

Rainbow initiated the CON proceedings by filing its CON Application with SHPDA. However, Liberty initiated the Reconsideration Decision by its request for a public hearing. *See* HRS § 323D–47. Thus, applying HRS § 91–10(5), the operative question is what constitutes "the proceeding," the CON Application as a whole, or the Reconsideration Decision.

With respect to the CON Application, Rainbow had the burden of proof to show that its proposal adequately satisfied the factors set forth in HRS § 323D–43 (2010). SHPDA rule HAR § 11–186–42 affirmatively establishes this burden, stating that "[t]he applicant for a certificate of need ... shall have the burden of proof[.]" Liberty argues that the Reconsideration Decision was part of the "proceeding" on the CON Application, and therefore the burden did not shift to Liberty subsequent to the Decision on the Merits.

HRS § 323D–47 supports Liberty's view inasmuch as it provides a number of circumstances in which a request for a public hearing is supported by "good cause." For example, a request "shall be deemed by the reconsideration committee to have shown good cause," if:

(1) It presents significant, relevant information not previously considered by the state agency;

(2) It demonstrates that there have been significant changes in factors or circumstances relied upon by the state agency in reaching its decision;

(3) It demonstrates that the state agency has materially failed to follow its adopted procedures in reaching its decision;

(4) It provides such other bases for a public hearing as the state agency determines constitutes good causes; or

(5) The decision of the administrator differs from the recommendation of the statewide council.

HRS § 323D–47. It is not disputed that the burden is on the person requesting a public hearing before a reconsideration committee to show good cause. *Id.* Once good cause has been shown however, the committee "shall schedule a public hearing for reconsideration of the decision." HAR § 11–186–82(d) (1981).

Because, at the time of the hearing, the decision on the CON application is literally being considered again, it will once more be the responsibility of the party that filed the application to show that its application should be approved. Thus, in the instant case, once Liberty would successfully demonstrate good cause for a reconsideration hearing pursuant to HRS § 323D–47, the burden of proof would be on Rainbow to support its application once again. On remand for a new reconsideration decision by a reconstituted reconsideration committee, Rainbow would therefore have the burden of proof.

### VII.

For the foregoing reasons, I would vacate the court's December 13, 2011 final judgment, which affirmed the SHPDA Reconsideration Committee's February 17, 2011 Reconsideration Decision, and remand to the court with instructions to remand the case to SHPDA for further proceedings consistent with the principles expressed herein. For these reasons, I respectfully concur in part, and dissent in part.